UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

Case No. 5:24-cv-01154-PAB

NORM DETRICK and JUDY DETRICK,

    Plaintiffs,

v.

CRUISERS YACHTS – KCS INTERNATIONAL INC. d/b/a CRUISERS YACHTS, SKIPPER MARINE OF OHIO, LLC d/b/a SKIPPERBUD'S, KOHLER CO., JET THRUSTER MARINE, LLC d/b/a JET THRUSTER NORTH AMERICA, MARK PEDERSEN, DAN ZENZ, TODD RIEPE, and JOHN FERFECKI,

    Defendants.

## DEFENDANTS CRUISERS YACHTS, SKIPPERBUD'S, MARK PEDERSEN, DAN ZENZ, TODD RIEPE, AND JOHN FERFECKI'S MEMORANDUM IN SUPPORT OF JOINT MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Defendants KCS International, Inc., doing business as Cruisers Yachts ("Cruisers"), Skipper Marine of Ohio, LLC, doing business as SkipperBud's ("SkipperBud's"), Mark Pedersen, Dan Zenz, Todd Riepe, and John Ferfecki (collectively, the "Moving Defendants"), by and through their undersigned counsel, hereby submit this Memorandum in Support of their Joint Motion to Dismiss, seeking to dismiss Counts I, II, III, IV, V, VI, VII, VIII, X, XI, XII, XIII, and XV of Plaintiffs' Complaint, *see* [ECF No. 1], because the Complaint fails to state any causes of action against the Moving Defendants with the sole exception of the Breach of Express Warranty claim brought against Cruisers (Count IX). The Moving Defendants state as follows:

## INTRODUCTION

On or about November 11, 2021, Plaintiffs Norm and Judy Detrick (collectively, the

"Detricks" and/or the "Plaintiffs") ordered a Cruisers Yachts 54' Fly vessel identified with Hull Identification Number CRSSN135A223 (the "Vessel") from SkipperBud's. The Detricks took delivery of the Vessel in Wisconsin in July 2022 after a successful sea-trial, going so far as signing the Owners' Registration, confirming that the Vessel was indeed satisfactory and that it fully met their expectations. After accepting delivery of the Vessel and piloting it to their home port in Ohio, the Detricks intentionally and significantly modified the Vessel's design by incorporating a bow and stern thruster system installed by Defendant Jet Thruster Marine, LLC. Notably, this system is not part of the original build, and is not offered by Cruisers in the original manufacture and design. This was a significant change to the Vessel that obviously impacted its performance.

Despite these (and many other) actions taken by the Detricks that greatly affected the Vessel's original design, Cruisers continued to provide dedicated warranty support to the Detricks, including sending representatives to analyze the Vessel's new condition. As part of that assistance, Cruisers designed a post-sale design modification to adjust the Vessel's running attitude, a change that was solely needed as a result of the Detricks' modifications and misuse of the Vessel.[1]

Unfortunately, no matter how much warranty and goodwill service and assistance Cruisers and SkipperBud's would provide, it was to no avail, as the Detricks have time and time again proven to be inescapably dissatisfied with the Vessel. Notably, they have continued to make heavy use and enjoyment of the Vessel for over two years, voyaging across the United States' Great Lakes and Lake Erie's islands, through the Erie Canal, along the Eastern Coast from New Jersey to South Carolina, and more, all despite claiming that it is a lemon and demanding rescission. This lawsuit has ensued, despite the Moving Defendants' gargantuan efforts to appease the Detricks.

---

[1] Cruisers expended significant funds and resources modifying the Vessel as goodwill, as these changes were not covered by any Cruisers Limited Warranty.

Although the Complaint is a considerably sizeable pleading consisting of 97 pages, 683 numbered paragraphs, and 273 pages of exhibits, it is nonetheless severely lacking by way of legal support. The various counts raised against the Moving Defendants almost completely fail to state a claim, and dismissal is appropriate. The Complaint's deficiencies include the following:

- Plaintiffs' tort claims alleging negligent misrepresentation are precluded by the application of Ohio's Economic Loss Rule, as the claims seek the same remedies made available pursuant to the Parties' contractual relationship. *See* Purchase Agreement at [ECF No. 1-40];

- The negligent misrepresentation and Ohio Consumer Sales Protection Act (the "CSPA") claims largely fail as they are based on mere, unactionable sales puffery. *See, e.g.*, Compl. at ¶ 569;

- Plaintiffs' CSPA claims are similarly precluded as the Purchase Agreement negotiated by and entered into by the Plaintiffs includes an enforceable merger clause. *See* Purchase Agreement at [ECF No. 1-40];

- In addition to the reasons above, Plaintiffs' CSPA claim against John Ferfecki is even more baseless as the Complaint makes it clear that he was not involved in the negotiations and subsequent purchase of the Vessel, and only became involved five months after the purchase. As such, the CSPA is plainly inapplicable. *See, e.g.*, Compl. at ¶ 80;

- Plaintiffs' attempt to demand revocation pursuant to the CSPA falls flat on its face, as Plaintiffs purchased the Vessel over two years ago, have heavily used the Vessel taking it across the nation and continuing to pilot it to this day, and made substantial and permanent changes to the Vessel that render revocation unavailable. *See, e.g.,* Compl. at ¶¶ 67, 70, 91, 143, 146, 564, [ECF No. 1-12], [ECF No. 1-20];

- All claims for breach of implied warranties fail against Cruisers as Plaintiffs have not alleged privity with Cruisers, rather acknowledging that they purchased the Vessel from SkipperBud's. *See, e.g.*, Compl. at ¶ 621;

- All claims for breach of implied warranties fail against SkipperBud's due to the enforceable disclaimers included in the Purchase Agreement. *See, e.g.*, Purchase Agreement at [ECF No. 1-40]; and

- The Complaint as a whole is an impermissible shotgun pleading that also fails to meet the heightened pleading standards required by Rule 9(b), as it improperly lumps the Defendants together and fails to provide the specificity regarding the fraud-based claims asserted pursuant to the CSPA. *See generally* Compl.

## ALLEGATIONS OF PLAINTIFFS' COMPLAINT[2]

On or about November 11, 2021, Plaintiff Norm Detrick entered into the Purchase Agreement attached to the Complaint as Exhibit 40 with SkipperBud's. *See* [ECF No. 1-40] (the "Purchase Agreement"). Pursuant to the Purchase Agreement, the Detricks agreed that "[a]ny boat, motor, trailer and/or accessories sold hereunder is sold as is without any warranties by [SkipperBud's], express or implied, including any implied warranty of merchantability of fitness for a particular purpose." *See* [ECF No. 1-40] at Page 3, ¶ 4. The Detricks were provided with the Cruisers Limited Warranty issued from Cruisers, a copy of which is attached as part of Composite Exhibit 41 to the Complaint. *See* [ECF No. 1-41] at Page 1 (the "Cruisers Limited Warranty").

The Vessel was delivered to the Detricks on July 25, 2022. *See* Compl. at ¶¶ 50, 60. As part of that delivery, Norm Detrick completed a pre-delivery record on July 25, 2022, confirming that both the interior and exterior of the Vessel were free from defects, a copy of which is attached as part of Composite Exhibit 41 to the Complaint. *See* [ECF No. 1-41] at Pages 5-7 (the "Pre-Delivery Checklist"). Included within the Pre-Delivery Checklist were confirmations of a successful sea trial. *See* [ECF No. 1-41] at Page 6.

Over the next few months, the Detricks complained of various alleged issues with the Vessel, and Cruisers and SkipperBud's worked with the Detricks to address any issues that would arise. *See* Compl. at ¶¶ 61-77. In order to continue assisting the Detricks with their perceived warranty issues, Cruisers' representative John Ferfecki was allegedly assigned to work with the Detricks in or around December 2022. *See* Compl. at ¶ 80. Notably, there are no allegations that

---

[2] The Moving Defendants accept as true the allegations in the Complaint solely for the purposes of this Motion to Dismiss, and reserve their right to dispute the allegations in the Complaint if the motion to dismiss is not granted and the case proceeds.

- 4 -

John Ferfecki had ever been involved with or communicated the Detricks prior to the purchase of the Vessel; rather, it is alleged that John Ferfecki entered the Detricks' experience over five months *after* the Vessel was purchased by the Detricks. *See generally* Compl.; *see also* Compl. at ¶ 26 (listing out all of the members of the so-called "Promise Team" consisting of everyone that the Detricks worked with at SkipperBud's and Cruisers before purchasing the Vessel, a list which notably does *not* include John Ferfecki).

While the Detricks allege that issues were not resolved, it is undisputed (and admitted in the allegations) that the Detricks continued to use the Vessel through to the present. *See, e.g.,* Compl. at ¶¶ 86, 90, 99-100, 106-123. During the Detricks' ownership of the Vessel, it has been to Marblehead, Ohio, *see* Compl. at ¶ 70, Atlantic City, New Jersey, *see* Compl. at ¶ 143, and South Carolina, *see* Compl. at ¶ 146. Despite Plaintiffs' complaints, *they continue to own and use the Vessel*. *See* Compl. at ¶ 564 ("From July 2022 to present…"). Plaintiffs' own records attached to the Complaint illustrate their significant usage of the Vessel. *See, e.g.*, Exhibit 12 to the Complaint (November 1, 2022 email from Norm Detrick referencing 120 engine hours and 409 hours on the Sea Keeper); Exhibit 20 to the Complaint (June 5, 2023 email from Norm Detrick referencing 300 hours on the Kohler generator); Exhibit 31 to the Complaint (April 2, 2024 email from Norm Detrick referencing the Vessel in Hilton Head, South Carolina).[3]

## LEGAL STANDARD FOR A MOTION TO DISMISS

A Rule 12(b)(6) motion questions the legal sufficiency of a pleading. In ruling on a Rule 12(b)(6) motion, this Court can assume that all of the factual allegations set forth in the four corners of the complaint are true. *See, e.g., U.S. v. Gaubert*, 499 U.S. 315, 327 (1991); *Brower v. County*

---

[3] It should be noted that these engine hours, generator hours, and Sea Keeper hours are all just based on the exhibits to the Complaint—the actual hours as of now are many multiples higher. As an example, the engine hours are now believed to be in excess of 800 hours.

*of Inyo*, 489 U.S. 593, 598 (1989); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). *See also, e.g.*, *US Herbs, LLC v. Riverside Partners, LLC*, No. 1:15 CV 2557, 2016 WL 3090925, *3 (N.D. Ohio June 2, 2016). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678. ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."). A complaint "does not need detailed factual allegations," but the allegations "must be enough to raise a right to relief above the speculative level." *Id.*

Furthermore, Federal Rule of Civil Procedure 9(b) requires that fraud claims be pled with particularity. Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). "It is well-settled in the Sixth Circuit that circumstances constituting fraud include 'the time, place, and **content** of the alleged misrepresentation' as well as the identity of the individual making the representation." *US Herbs*, 2016 WL 3090925, at *3 (emphasis added) (quoting *United States v. Ford Motor Credit Co.*, 532 F.3d 496, 504 (6th Cir. 2008)) (other citations omitted). "The plaintiff must also allege the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Id.* (quotation omitted). "The test is whether the complaint places the defendant on 'sufficient notice of misrepresentation, allowing the defendants to answer, addressing in an informed way plaintiffs [sic] claim of fraud.'" *C. Norris Mfg., LLC v. BRT Heavy Equip., LLC*, No. 5:14CV2797, 2016 WL 4079752, *4 (N.D. Ohio Aug. 1, 2016) (quoting *Coffey v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir. 1993)) (other citation omitted).

"Dismissal is [also] proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." *US Herbs*, 2016 WL 3090925, at *2 (citation omitted). "Legal conclusions and unwarranted factual inferences are not accepted as true, nor are mere conclusions afforded liberal Rule 12(b)(6) review." *Id.* Accordingly, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1955 (2009)).

Lastly, under Federal Rule of Civil Procedure 12(f)(2): "The court may strike from a pleading . . . any . . . impertinent . . . matter . . . on motion made by a party[.]" *See* Fed. R. Civ. P. 12(f)(2). Impertinent matter includes requests for punitive damages where the complaint does not state a legally cognizable claim for an intentional tort. *See, e.g.*, *Astco Holdings Corp. v. Air Tool Serv. Co.*, No. 1:15CV1386, 2016 WL 3078902, *2 (N.D. Ohio June 1, 2016) (striking as impertinent a punitive damages claim where the plaintiff's claims sounded in contract).

## ARGUMENT

### I. Plaintiffs' Tort-based Claims Fail due to the Economic Loss Rule.

Plaintiffs allege that they purchased the Vessel from SkipperBud's. However, that alleged contractual privity is fatal to Plaintiffs' tort-based claims due to the clear application of the Economic Loss Rule. Plaintiffs' claimed damages for their alleged disappointment with the Vessel are the exact types of damages that the Economic Loss Rule expressly prohibits. And because the Plaintiffs do not and cannot seek any recovery for personal injury or injury to other property, the tort-based claims fail as a matter of law.

Ohio courts regularly follow the Economic Loss Rule, which "generally prevents recovery in tort of damages for purely economic loss." *Corporex Dev. & Constr. Mgt., Inc. v. Shook, Inc.*,

835 N.E.2d 701, 704 (Ohio 2005) ("The well-established general rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable.") (internal citations omitted). Essentially, this principle embraces the "fundamental principles of contract law [that] teach us that parties to a commercial transaction should remain free to govern their own affairs." *Chemtrol Adhesives, Inc. v. Amer. Mfrs. Mut. Ins. Co.*, 537 N.E.2d 624, 628 (Ohio 1989).

Specifically, the Economic Loss Rule bars recovery for direct and consequential damages related to the loss of an allegedly defective product and limits tort recovery solely to claims for personal injury and property damages (not including the product itself). *See, e.g., Chemtrol*, 537 N.E.2d at 635 ("we hold that a commercial buyer seeking recovery from the seller for economic losses resulting from damage to the defective product itself may maintain a contract action for breach of warranty under the Uniform Commercial Code; however, in the absence of injury to persons or damage to other property the commercial buyer may not recover for economic losses premised on tort theories of strict liability or negligence.").

Courts in the Northern District of Ohio have in fact applied the Economic Loss Rule to negligent misrepresentation claims. *See, e.g., Trgo v. Chrsyler Corp.*, 34 F. Supp. 2d 581, 595 (N.D. Ohio 1998) ("Plaintiffs are barred from pursuing the negligent misrepresentation claim by the economic loss doctrine…"); *see also Picker Int'l, Inc. v. Mayo Foundation*, 6 F. Supp. 2d 685, 688-89 (N.D. Ohio 1998) ("In Ohio it is well established that a party cannot bring a cause of action in tort (such as negligent misrepresentation) for economic losses.").[4]

---

[4] It should be noted that other courts have held that negligent misrepresentation claims can survive the application of the Economic Loss Rule, *see, e.g. Nat'l Mulch & Seed, Inc. v. Rexius Forest By-Products Inc.*, No. 2:02-cv-1288, 2007 WL 894833 at *8 (S.D. Ohio Mar. 22, 2007).

Plaintiffs negotiated and memorialized their rights regarding the Vessel in the Purchase Agreement. *See* Purchase Agreement at [ECF No. 1-40]; *see also* Compl. at ¶ 621. Their alleged dissatisfaction with their end of the bargain is a contract issue that should be resolved as such; otherwise, the binding terms of the Purchase Agreement and the consideration of each of the parties are rendered meaningless. Accordingly, Counts I and II should be dismissed.

## II. Plaintiffs' Negligent Misrepresentation and CSPA Claims are Based on Mere, Unactionable Sales Puffery.

In the Plaintiffs' counts for negligent misrepresentation and CSPA, they include lists of categories of "false information [supplied] to the Detricks…". *See* ¶¶ 569, 576, 583, 590, 597, 604, 611, 670. The vast majority of these categories of purportedly false information that form the bases for these claims are generic and unactionable items of alleged misrepresentation such as "[b]est in industry dealer support," "[b]est in industry manufacturer support," "[b]est in industry service," "[b]est in industry quality control," and so forth. *See* ¶¶ 569(b)-(o), 576(b)-(o), 583(b)-(o), 590(b)-(v), 597(b)-(p), 604(b)-(p), 611(b)-(c)[5], 670(b)-(g).

Ohio courts have previously found that similar alleged misrepresentations are not actionable, but instead puffery. *See, e.g.*, *Jordan v. Paccar, Inc.*, 37 F.3d 1181 (6th Cir. 1994) (seller's representation that truck was "rock solid" was mere commercial puffery); *see also Dayton Sports Ctr., Inc. v. 9-Ball, Inc.*, 751 N.E.2d 520 (Ct. App. Ohio 2d Dist. 2001) (finding that the statements that (1) the company "has been family-owned since 1949," (2) the company is "Ohio's largest Brunswick [pool table] distributor," and (3) "Brunswick is 'the World's Leader in Billiards'" were non-actionable puffery). Plaintiffs' claims of alleged misrepresentations are largely the very same commercial puffery that cannot form the basis for liability. *See Davis v.*

---

[5] The Complaint erroneously restarts the subparagraphs in Paragraph 611 and refers to subpart (c) when it should be (q).

*Byers Volvo*, No. 11CA817, 2012 WL 691757 (Ct. App. Ohio. 4th Dist. Feb. 24, 2012) at *11 (finding that a reasonable consumer would interpret the statement "tradition of excellence" as a general claim of superiority, which constitutes puffery and is not actionable under the CSPA). As such, Counts I, II, III, IV, V, VI, VII, VIII, and XV should be dismissed to the extent that they are based on simply unactionable commercial puffery.

### III. Plaintiffs' Ohio Consumer Sales Protection Act Claims are Barred by an Enforceable Merger Clause in the Purchase Agreement.

Similar to the Economic Loss Rule argument above, the Parties' contractual agreement should be enforced in its entirety, including the fact that by entering the Purchase Agreement, the Plaintiffs agreed that the Purchase Agreement encompassed all of the Parties' contractual commitments to one another, and in fact superseded all prior oral or written agreements as well as any other representations made before. *See* Purchase Agreement at [ECF No. 1-40] at 2 ("ENTIRE AGREEMENT. This agreement includes all of the terms and conditions of the sale contemplated by this agreement and is the entire agreement and supersedes any prior oral or written agreement between the parties concerning the subject matter hereof. No other representation or warranties of any type have been made by [SkipperBud's] to Purchaser.") (emphasis in original).

Ohio courts regularly honor such merger and entire agreement provisions. *See, e.g., Hunter v. Shield*, 550 F. Supp. 3d 500, 524 (S.D. Ohio 2021) ("because the written agreement was the final expression of the parties' agreement, the Court may not consider the Hunters' extrinsic evidence of express warranties made outside the written agreement."); *see also Keel v. Toledo Harley-Davidson/Buell*, 920 N.E.2d 1041, 1044 (Ct. App. Ohio 6th Dist. 2009) ("The inclusion of the merger clause indicated that the writing is fully integrated and it supersedes any previous agreements or understandings between the parties. Accordingly, because the disclaimer waived all express or implied warranties, appellant's second assignment of error is not well taken."). As

such, Plaintiffs' CSPA claims (Counts III, IV, V, VI, VII, VIII, and XV) should be dismissed in their entirety due to the enforceable merger clause in the Purchase Agreement.

### IV. Plaintiffs' Claim Pursuant to the Ohio Consumer Sales Protection Act Against John Ferfecki Fails as He Has No Connection to the Consumer Transaction.

While the various CSPA claims asserted by Plaintiffs in this lawsuit are all fatally-flawed, *see infra*, the count brought against Cruisers employee John Ferfecki is particularly egregious and should be dismissed immediately. Plaintiffs contend that they were misled into purchasing the Vessel by the "meetings, discussion, representations, promises, and information provided by representatives from Cruisers Yachts and SkipperBud's…" *See* Compl. at ¶ 26. John Ferfecki was not included in these early allegations, which makes sense, as he did not begin working with the Detricks until many months after they had purchased the Vessel. *See* Compl. at ¶ 80. Rather, John Ferfecki was brought in "[i]n or around December 2022… to manage and oversee the work on the [Vessel] and prepare for the second Great Loop attempt…" *See* Compl. at ¶ 80. Notably, he was *not* involved in the sale negotiations, and was not identified by Plaintiffs as being part of the so-called "Promise Team." *See* Compl. at ¶ 26. No conduct alleged by Plaintiffs and attributed to John Ferfecki could have had anything to do with contributing to the Plaintiffs' decision to enter the consumer transaction, which renders the CSPA simply inapplicable. *See, e.g., Michelson v. Volkswagen Aktiengesellschaft*, 99 N.E.3d 475, 478 (Ct. App. Ohio. 8th Dist. 2018) ("[a]lthough there is no requirement of privity between the supplier and the consumer for the CSPA to be applicable, 'the defendant must have some connection to the consumer transaction in quest in order to be liable as a supplier for deceptive practices which violate the Ohio Consumer Sales Practices Act.'"); *see also Gentile v. Merck & Co., Inc.*, No. 2:19-cv-4174, 2022 WL 1084883, at *2 (S.D. Ohio Apr. 11, 2022) (dismissing a claim where there were no allegations that plaintiff engaged with the defendants to purchase the product at issue); *see also Becker v. Cardinal Health, Inc.*, 179

N.E.3d 769, 775 (Ct. App. Ohio 10th Dist. 2021) (holding that a wholesale distributor, because it neither manufactures nor sells products to customers, did not engage in a consumer transaction to satisfy the requirements of a CSPA claim).

John Ferfecki's involvement with the Detricks is completely unrelated to their purchase of the Vessel, and therefore Count XV should be dismissed against him in its entirety.

### V. Plaintiffs' Revocation Claim Fails as Plaintiffs Waited Over Two Years to Demand Revocation and Substantially Changed the Condition of the Vessel.

Plaintiffs seek revocation of their purchase of the Vessel pursuant to the CSPA, which provides a statutory basis to revoke a purchase, provided that such revocation "must occur within a reasonable time after the consumer discovers or should have discovered the ground for it and before any substantial change in condition of the subject of the consumer transaction." *See* Ohio Statute § 1345.09(C)(1).

As admitted in the Complaint, the Plaintiffs purchased the Vessel in November 2021. *See* Compl. at ¶ 15; *see also* Purchase Agreement at 1. Plaintiffs asserted this claim for revocation upon the filing of the Complaint in July 9, 2024. *See generally* [ECF No. 1]. As such, Plaintiffs waited over two years, seven months from when they entered the Purchase Agreement to demand revocation. The CSPA has a two-year statute of limitations, and Plaintiffs' claims for rescission are therefore time-barred. *See, e.g. Allen v. Andersen Windows*, 913 F. Supp. 2d 490, 506 (S.D. Ohio 2012); *see also* Ohio Rev. Code § 1345.10(c) ("An action under sections 1345.01 to 1345.13 of the Revised Code may not be brought more than two years after the occurrence of the violation which is the subject of suit…").

Even if the Court were to determine that Plaintiffs' claims are timely due to tolling or some other equitable argument, it is indisputable even within the four corners of Plaintiffs' Complaint that there have been *many* substantial changes in the condition of the Vessel that renders rescission

inapplicable and inappropriate in this case. *See, e.g.,* Compl. at ¶¶ 67, 91. Ohio courts preclude revocation and rescission in such scenarios where a product was significantly used and enjoyed. *See, e.g., Clayton v. McCary*, 426 F. Supp. 248, 262 (N.D. Ohio 1976) (finding that where a car's engine had been replaced, this was a "substantial change" in the condition of the vehicle, and therefore revocation was unavailable); *Davenport v. Score Automotive*, No. CA97-03-042, 1997 WL 746060, at *2 (Ct. App. Ohio 12th Dist. 1997) (revocation unavailable because "a substantial change had occurred in the vehicle" by virtue of the 40,000 additional miles the car was driven). Similar cases where revocation has been found unavailable include where a vehicle was continued to be driven over six months after the discovery of an alleged violation. *See Frey v. Vin Devers, Inc.*, 608 N.E.2d 796, 801 (Ct. App. Ohio 6th Dist. 1992).

Here, Plaintiffs' own allegations make it clear that they have heavily used the Vessel for over two years, taking it long journeys through the Great Lakes, *see* Compl. at ¶ 70, to New Jersey, *see* Compl. at ¶ 143, and to South Carolina, *see* Compl. at ¶ 146. Plaintiffs still own and use the Vessel, *see* Compl. at ¶ 564, and exhibits attached to the Complaint reference 120 engine hours, *see* Compl. at Ex. 12, 409 Sea Keeper hours, *see id.*, and 300 generator hours, *see* Compl. at Ex. 20. Plaintiffs concede that they installed bow and stern thrusters, *see* Compl. at ¶ 67, and that the hull of the Vessel was modified to address their concerns, *see* Compl. at ¶ 91. These significant changes, including the installation of thrusters by another company unrelated to Cruisers, are substantial changes that render revocation improper. *See, e.g., Baker v. Tri-County Harley Davidson, Inc.*, No. CA98-12-250, 1999 WL 1037262, at *2 (Ct. App. Ohio 12th Dist. Nov. 15, 1999) (holding that where a motorcycle owner took his vehicle to a non-dealer repair shop to get his transmission changed, this was a substantial change to the motorcycle that did not allow for revocation as a remedy). While the Plaintiffs may believe and allege that the Vessel has not lived

up to their expectations, they cannot deny that they have heavily used the Vessel and it has undergone significant changes. As such, and by the black letter application of the CSPA, revocation is simply unavailable, and Count VIII should be dismissed with prejudice.

> **VI. Plaintiffs' Implied Warranty Claims Against Cruisers Fail due to the Lack of Privity with Cruisers.**

The facts presented in the Complaint fail to state a prima facie case for breach of implied warranty against Cruisers under either Ohio law or federal law. In Ohio, "longstanding Ohio jurisprudence provides that purchasers of automobiles may assert a contract claim for breach of implied warranty only against parties with whom they are in privity." *Curl v. Volkswagen of Am., Inc.*, 871 N.E.2d 1141, 1147 (Ohio 2007). Notably, privity is not created where a manufacturer's express warranty is passed to an owner from an authorized dealer. *See Hartman v. Mercedes-Benz, USA, LLC*, No. 1:08-cv-03043, 2010 WL 907969, at *7 (N.D. Ohio Mar. 11, 2010).

Here, Plaintiffs' allegations fail to establish privity between Plaintiffs and Cruisers in any respect, nor is privity even alleged. Plaintiffs readily admit that they purchased the Vessel "from SkipperBud's," *see* Compl. at ¶ 27, and entered into the Purchase Agreement with SkipperBud's. *See* Purchase Agreement at 1. Plaintiffs' attempts to lump together Cruisers and SkipperBud's do not equate to an allegation of privity; rather, they are simply a byproduct of Plaintiffs' shotgun pleading style throughout the Complaint. *See, e.g.*, Compl. at ¶ 29 ("Cruisers Yachts and SkipperBud's held Cruisers Yachts forth to the Detricks as the best yacht manufacturer in the industry, delivering the highest standards of quality and luxury."). Plaintiffs cannot obstruct the plain truth of the matter—the Vessel was purchased from SkipperBud's and therefore privity is lacking with Cruisers. Accordingly, Counts X, XI, XII, and XIII must fail as to Cruisers.

### VII. Plaintiffs' Implied Warranty Claims Against SkipperBud's Fail due to the Enforceable Disclaimers in the Purchase Agreement.

As represented in the Purchase Agreement attached to the Complaint, SkipperBud's did not provide any written warranty to Plaintiffs in the sale of the Vessel. Moreover, the Purchase Agreement fully and properly disclaimed any and all warranties, both express and implied. There is no basis for these claims against SkipperBud's, and they should be dismissed with prejudice.

A seller is entitled to exclude warranties, both express and implied, at the time of sale. *See Hopkins v. Car Go Self Storage*, 135 N.E.3d 1229, 1234 (Ct. App. Ohio 10th Dist. 2019) ("implied warranties may be disclaimed by contract."). As long as such a disclaimer is conspicuous, it is enforceable to can disclaim any implied warranties. *See, e.g.*, *Antero Res. Corp. v. Tejas Tubular Prods., Inc.*, 610 F.Supp.3d 1047, 1057 (S.D. Ohio 2022) ("KMS did not manufacture, process, or assemble the defective casing, and the warranty disclaimer specifically excludes the implied warranties of merchantability and fitness for a particular purpose. The disclaimer is conspicuous. Thus, KMS disclaimed all implied warranties."). The warranty disclaimer in the Purchase Agreement was conspicuous and set forth under the obvious header (set forth in both capitalized letters and underlined) of "NEW PRODUCT WARRANTIES." The disclaimer in its entirety reads as follows:

> NEW PRODUCT WARRANTIES. The only warranties applicable to any new boat, motor, trailer and/or accessories sold by Seller hereunder are those warranties provided by the manufacturer of such boat, motor, trailer and/or accessories. Seller shall furnish Purchaser with any certificate of warranty or other similar document which may be provided by the manufacturer of any boat, motor, trailer and/or accessories sold hereunder, and shall fulfill any obligations which it as a dealer may have under a particular manufacturer's warranty. Otherwise, Seller neither assumes, nor authorizes anyone to assume for it, any liability or obligation relating to possible defects in any boat, motor, trailer and/or accessories sold hereunder and shall not be liable for any damages, consequential or otherwise, with respect to the same. Any boat, motor, trailer and/or accessories sold hereunder is sold as is without any warranties by Seller, express or implied, including any implied warranty of merchantability or fitness for a particular purpose.

*See* Purchase Agreement at [ECF No. 1-40] at 2.

As such, the disclaimer language in SkipperBud's Purchase Agreement is fully enforceable, and as such under Ohio law was effective to exclude the implied warranty of merchantability as well as the implied warranty for fitness for a particular use. Accordingly, Counts X, XI, XII, and XIII should be dismissed with prejudice as to SkipperBud's.

### VIII. Plaintiffs' Ohio Consumer Sales Protection Act Claims Are Improperly Pled and Do Not Meet Rule 9(b)'s Heightened Pleading Standard.

To state a claim under the CSPA, a plaintiff must allege a material misrepresentation, deceptive act, or omission that impacted his or her decision to purchase the subject product. *See Ewalt v. Gatehouse Media Ohio Holdings II, Inc.*, No. 2:19-cv-4262, 2021 WL 825978, at *16 (S.D. Ohio Mar. 4, 2021). Furthermore, the deceptive act or statement "must also concern a matter that is or is likely to be material to a consumer's decision to purchase the product or service involved." *Richards v. Beechmont Volvo*, 711 N.E.2d 1088, 1090 (Ct. App. Ohio 1st Dist. 1998). While there are varying holdings, Ohio courts have held that CSPA claims must meet the heightened pleading standard of Federal Rule 9(b). *See, e.g., Ferron v. SubscriberBase Holdings, Inc.*, No. 2:08-cv-760, 2009 WL 650731, at *5 n.4 (S.D. Ohio Mar. 11, 2009) ("Rule 9(b) applies in cases such as this because actions for deceptive trade practices are, at their core, fraud claims."). Pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, a complaint alleging fraud must "state with particularity the circumstances constituting fraud of mistake,' but '[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

Plaintiffs fail to adequately plead their fraud-based claims, largely conflating the Moving Defendants and lumping parties together. As an example, the Complaint includes many references to alleged misrepresentations made by the "Promise Team," a group that is defined to include

individual Defendants Pedersen, Zenz, and Riepe, as well as other specific employees of the Moving Defendants who are themselves not named as defendants in this lawsuit. *See, e.g.,* Compl. at ¶¶ 26, 552, 558. Essentially, every reference to the so-called "Promise Team" could mean six different individuals, some named as defendants and others not.

As to the allegations that might be more specific with regards to which defendant is being referenced, the allegations themselves are still wholly vague and absent any details that put the Moving Defendants on notice. Myriad paragraphs throughout the Complaint include such generic statements as "Cruisers Yachts and SkipperBud's represented and promised that they would provide the best service in the industry…" *See, e.g.,* Compl. at ¶ 32.[6] An example of an allegation that attempts to narrow down onto a specific Moving Defendant still lacks any helpful individualized information: "SkipperBud's Regional VP Riepe represented to the Detricks that SkipperBud's would sell them the [Vessel] for a price at or near cost to minimize the impact of depreciation if the Detricks sold it within a few years." *See* Compl. at ¶ 46.

These allegations fall far short of the heightened requirements of Rule 9(b), as they provide no information regarding the time, place, and substance of the alleged fraud, or who engaged in them. Furthermore, Plaintiffs' claims are textbook shotgun pleadings which require the Moving Defendants and the Court to sift through approaching 700 numbered paragraphs and nearly 300 pages of exhibits. *See, e.g., Douglas v. Ratliff*, No. C-1-09-60, 2009 WL 3378672, at *12 (S.D. Ohio Oct. 20, 2009) (finding that where plaintiffs assert numerous state law claims but place the

---

[6] The Complaint is full of such vague and generic allegations. *See, e.g.,* Compl. at ¶ 178 ("The Detricks relied upon the representations of Cruisers Yachts and SkipperBud's regarding the availability of the specific requested colors for the [Vessel] in deciding to move forward with the purchase."); *see also* Compl. at ¶ 189 ("Cruisers Yachts, SkipperBud's, and specifically Cruisers Yachts' VP Zenz initially responded to the Detricks' concerns by communicating that there was no problem with the joystick system and that thrusters were not necessary effectively operate the [Vessel].").

onus on the court to sift through the pleadings to determine the material facts, such a complaint should be dismissed); *Taylor v. City of Cleveland*, No. 1:05-cv-2983, 2006 WL 1982968, at *1 n.3 (N.D. Ohio July 13, 2006) ("a shotgun complaint leads to a shotgun answer, and litigating a case framed by shotgun pleadings obviously harms one or both of the parties").

Accordingly, Counts III, IV, V, VI, VII, VIII, and XV should fail, as they make overbroad claims spread over Defendants Cruisers, SkipperBud's, Pedersen, Zenz, Riepe, and Ferfecki, but fail to provide any of the required differentiation or detail that would allow the Moving Defendants to be on notice of what each is being accused of, and defending themselves accordingly.

## **CONCLUSION**

For the foregoing reasons, the Moving Defendants respectfully request that this Court (1) dismiss with prejudice Counts I, II, III, IV, V, VI, VII, VIII, X, XI, XII, XIII, and XV of Plaintiffs' Complaint, and (2) grant any and all other relief that this Court may deem just and proper.

Dated:  September 9, 2024

Respectfully submitted,

*/s/ Travis L. Brannon*
Travis L. Brannon (No. 99290)
Christine G. Scherer (No. 101381)
K&L Gates LLP
210 Sixth Avenue
Pittsburgh, PA 15222
Phone: (412) 355-6500
Fax: (412) 355-6501
travis.brannon@klgates.com
christine.scherer@klgates.com

*Attorneys for Defendants Cruisers Yachts, SkipperBud's, Mark Pedersen, Dan Zenz, Todd Riepe, and John Ferfecki*

## CERTIFICATE OF SERVICE

I hereby certify that counsel of record who have appeared electronically in this case are deemed to have consented to electronic service and are being served on September 9, 2024 with a copy of this document via the Court's CM/ECF system.

*/s/ Travis L. Brannon*