**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| **NORM DETRICK,  ET AL.** | **CASE NO. 5:24-CV-01154** |
| **Plaintiffs,** | **JUDGE PAMELA BARKER** |
| **vs.** | |
| **KOHLER CO., ET AL.** | **DEFENDANT KOHLER CO.'S** |
| | **MOTION FOR JUDGMENT** |
| **Defendants.** | **ON THE PLEADINGS** |

Now comes Defendant Discovery Energy, LLC, as a successor in interest of the Kohler Energy business of Kohler Co. ("Kohler"), by and through undersigned counsel, and respectfully requests this Court to enter judgment on the pleadings in Kohler's favor under Fed. R. Civ. Pro. 12(c). By Plaintiffs' own admission, the generator at issue was installed improperly yet they continued to use it. They also fail to allege any privity between themselves and Kohler. Consequently, Kohler cannot be held liable under the Magnuson-Moss Act and applicable state and federal law governing warranties. At a minimum, Plaintiffs' claims are limited by the Economic Loss Rule. For this reason and those set forth in the memorandum in support, attached hereto and incorporated herein, Plaintiffs' claims against Kohler must be dismissed.

Respectfully submitted,

*/s/ Marshal M. Pitchford*
Marshal M. Pitchford (0071202)
mpitchford@dpylaw.com
DICAUDO, PITCHFORD & YODER, LLC
209 South Main Stret, Third Floor
Akron, Ohio 44308
Telephone: 330.762.7477
Facsimile:  330.762.8059

*Attorneys for Defendant Discovery Energy,*
*LLC, as a successor in interest of the Kohler*
*Energy business of Kohler Co.*

## MEMORANDUM IN SUPPORT

### I.    INTRODUCTION

Plaintiffs appear to allege only one claim against Defendant Kohler, which is found in Count XIV. That count is titled "Magnuson-Moss Warranty Act (15 U.S.C. § 2301, *et seq.*) Breach of Written Warranty Claim against Kohler."  Plaintiffs allege that Kohler violated the Magnuson-Moss Act by breaching a written, limited warranty, which is attached to the Complaint as Exhibit 37.  However, Plaintiffs assert an invalid warranty claim against Kohler for a host of reasons.

First, Plaintiffs clearly and unambiguously allege that the other defendants in this case improperly installed the Kohler generator into the yacht at issue.  This allegation wholly invalidates Plaintiffs' warranty claim.   For the claimed limited warranty to be valid, the generator must be "properly installed, maintained, and operated in accordance with Kohler's instruction manuals." In other words, the cited limited warranty is now invalid, and Kohler owes no duty to Plaintiffs, period.

Second, continued misuse of a product invalidates a warranty. Plaintiffs continued using the generator after learning it was improperly installed. Therefore, Kohler owes no duty to Plaintiffs under the limited warranty.

Third, in order to prevail, a plaintiff must allege sufficient facts to meet each essential element of its complaint.  Here, in making their Magnuson-Moss Act claim, Plaintiffs attempt to do so by generally alleging a design defect.  However, they fail to allege sufficient facts to meet *each* essential elements of a design defect claim.

Additionally, Plaintiffs have not alleged privity between themselves and Kohler.  The Complaint alleges that Defendant KCS International, Inc. dba Cruiser Yachts manufactured the yacht, using the Kohler generator as a component, and that Plaintiffs purchased the vessel from

Defendant Skipper Marine of Ohio, LLC.  As a result, there is no privity, and the breach of warranty claim must fail.

Lastly, Plaintiffs' Complaint makes broad claims regarding the impact this purchase has had on their life, their mental health, and their physical health. To the extent Plaintiffs are attempting to shoehorn tort damages into a warranty claim, their claim must be dismissed.  A warranty claim under the Magnuson Moss Act arising in Ohio is limited by Ohio's Economic Recovery Rule. Therefore, even if Kohler is liable in some way, it can only be liable for damages related to the repair or replacement cost of the generator under the warranty.  Each point will be addressed in turn.

## II.    ANALYSIS

### A.    Standard of Review

A motion for judgment on the pleadings under Fed. R. Civ. Pro. 12(c) is governed by the same standard of review that applies to a motion to dismiss under Fed. R. Civ. Pro. 12(b)(6). *See Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010). When reviewing a motion to dismiss, a court must construe the facts alleged in the complaint in the light most favorable to the plaintiff and accept all factual allegations as true.  *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008). A court need not accept, however, conclusory allegations "that do not include specific facts necessary to establish the cause of action."  *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, 650 F.3d 1046, 1050 (6th Cir. 2011). Rather, the complaint must plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

Under Fed. R. Civ. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal*, 556 U.S., at, 678, 129 S.Ct. at, 1940. While "detailed factual allegations" are not required, the Rule does call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570, 127 S.Ct. 1955, 1964-65 (2007). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 1965.

A pleading that merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. Rather, "the complaint's 'factual allegation must be enough to raise the right to relief above the speculative level,' and 'state a claim to relief that is plausible on its face.'" *Watson Carpet & Floor Covering, Inc. v. Mohawk Industries, Inc.*, 648 F.3d 452, 457 (6th Cir. 2011) (citing *Twombly*, 550 U.S. at 555). "[C]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Id*. In order to withstand a Rule 12(b)(6) motion to dismiss or Fed. R. Civ. P. 12(c) motion for judgment on the pleadings, "a complaint must contain direct or inferential allegations respecting all material elements under some viable legal theory." *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008); *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007).

**B.      The Magnuson-Moss Act Employs State Law to Decide Warranty and Defect Claims.**

Plaintiffs' only claim against Kohler in this case, i.e. breach of a written warranty, is cast as falling under the Magnuson-Moss Act, 15 U.S.C. Section 2301.  The "elements that a plaintiff must establish to pursue a cause of action for breach of warranty under the Magnuson-Moss Act

are the same as those required by Ohio law." *Kuns v. Ford Motor Co.*, 543 F. App'x 572, 575 (6th Cir. 2013) (referencing *Abele v. Bayliner Marine Corp.,* 11 F. Supp. 2d 955, 961 (N.D. Ohio 1997)). "In order to state an actionable claim of breach of warranty and/or violation of the Magnuson-Moss Act, a plaintiff must demonstrate that: (i) the item at issue was subject to a warranty; (ii) the item did not conform to the warranty; (iii) the seller was given reasonable opportunity to cure any defects; and (iv) the seller failed to cure the defects within a reasonable time or a reasonable number of attempts." *Temple v. Fleetwood Enters.*, 133 F. App'x 254, 268 (6th Cir. 2005); *see also Abele v. Bayliner Marine Corp.*, 11 F. Supp. 2d 955, 961 (N.D. Ohio 1997). Put another way, a plaintiff bears the burden to allege and then prove by a preponderance of the evidence that "(1) [t]here was, in fact, a defect in the product manufactured and sold by the defendant; (2) such defect existed at the time the product left the hands of the defendant; and (3) the defect was the direct and proximate cause of the plaintiff's injuries or loss." *McDonald v. Ford Motor Co.*, 42 Ohio St. 2d 8, 10, 326 N.E.2d 252 (Ohio 1975).

**C.      Plaintiffs Have No Right to Relief from Kohler under the Magnuson-Moss Act Because They Admit the Generator was Improperly Installed and Operated It Anyway.**

**1.      Plaintiffs Allege the Kohler Generator was Improperly Installed.**

Plaintiffs allege: (1) the generator was manufactured and warranted by Kohler; (2) that the generator overheated on at least 40 occasions between July 25, 2022 through at least May, 2024;[1] (3) that the impellors had to be replaced at least 10 times; and (4) that the intake plumbing system was defectively designed resulting in overheating.  However, they also quite clearly acknowledge that the generator and related components were improperly installed. (Plaintiffs' Compl., Doc. #1, ¶¶ 105, 127, 310, 316).

---

[1] Plaintiffs' Compl., Doc. #1, ¶¶ 60, 511.

"The design of a product cannot be held defective or unreasonably dangerous under Section 402(A) of the Restatement of Torts 2d unless the product is being used in an intended or reasonably foreseeable manner. Furthermore, a manufacturer need not anticipate all uses to which its product may be put, nor guarantee that the product is incapable of causing injury in all of its possible uses." *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 472 N.E.2d 707 (1984) (citations omitted.). It was never alleged that Kohler sold this generator directly to Plaintiffs for them to install themselves. Instead, the generator appears to have been procured by a professional yacht manufacturer who, as Plaintiffs admit, improperly installed the generator on their yacht. (Plaintiffs' Compl., Doc. # 1, ¶¶ 105, 127, 310, 316). Consequently, Kohler could not reasonably foresee that this downstream manufacturer would improperly install the generator.

In addition to Plaintiffs' allegations, Kohler's instruction manual for the alleged generator makes clear that a vessel manufacturer is responsible for designing the exhaust, cooling, and other components which connect to the generator and are responsible for cooling the generator. (Exhibit 1, Kohler Installation Manual; Kohler's Answer, Doc. # 29-1, Manual Sections at 3.1 and 3.2, Page ID No. 1403). For example, the generator must be installed in a proper location which provides adequate space for all components and protects the generator.

## 2.1  General Considerations

The key to installation is location.  Before making final plans for locating a generator set, consider the following.

### Installation Location Considerations

1. Choose a location that allows adequate space for cooling and exhaust system installation, fuel system installation, ventilation, and service access to the generator set (engine and generator).

2. Use craft stringers or other available structural members capable of supporting the generator set's weight.

3. Seal the generator set's engine room from the cabin to prevent exhaust gases and fuel vapors from entering the cabin.

See the current generator set specification sheet or Section 7 of this manual for generator set dimensions and weights.  See Figure 1-1 for a typical installation.

## 2.4  Mounting

Mount the generator set as high as possible to avoid contact with bilge splash and lower-lying vapors and to allow for downward pitch of the exhaust line toward the exhaust outlet.

Kohler Co. recommends mounting the generator set on a flat board attached to the craft stringers.  Craft stringers generally provide the best generator set support.  Ensure that the structural members can support the generator set's weight and withstand its vibration.

The generator set includes vibration mounts and a mounting tray or skid.  If desired, install additional vibration isolating pads underneath the generator set's base.

Use the four mounting holes in the mounting tray to mount the generator set securely to the craft.

For angular operating limits, consult the operation manual.

Indeed, the yacht manufacturer or individual installing the generator must also ensure proper ventilation (Exhibit 1, Kohler Installation Manual, Section at 3.1; Kohler's Answer, Doc. # 29-1, Page ID 1403) and that a cooling system (Id. at 3.2, Page ID 1403) is properly designed and supplied to the generator. Section 4 of the Manual details how the manufacturer needs to design and attach any exhaust components as well. (Id. at 4, Page ID 1407-1413). Section 5 of the Manual details how the fuel system should be designed and installed. (Id. at 5, Page ID 1415-1417). In

short, the Manual makes it clear that it is the yacht manufacturer's responsibility to design the plumbing and exhaust components to properly feed and cool the generator. Here, Plaintiffs allege that the exhaust was installed upside down. (Plaintiffs' Compl., Doc. # 1, ¶¶ 310, 316).

In addition to the upside-down exhaust, Plaintiffs' Complaint alleges that Defendant KCS International, Inc. dba Cruisers Yachts improperly applied "necessary protective coatings" to newly installed generator sea strainers and generator raw water engine pick-ups. (Plaintiffs' Compl., Doc. # 1, ¶¶ 105, 127). These components feed into the generator to help cool it and these deficiencies could explain the overheating. (Exhibit 1, Kohler Installation Manual, Section 3, Cooling System; Kohler's Answer, Doc. # 29-1, Page ID 1403). Plaintiffs contend that the alleged overheating was a result of this improper application of protective coatings. (Plaintiffs' Compl., Doc. # 1, ¶¶ 105, 127).

Ultimately, and as unmistakably alleged, Plaintiffs' generator problems are all related to the improper installation of the equipment and associated components by the yacht's manufacturer. Consequently, Kohler could not reasonably foresee that these professionals would improperly install the generator in a manner inconsistent with the generator's design and instructions manual, and Kohler, therefore, cannot be held liable.

### 2. The Generator's Improper Installation Voids the Limited Warranty.

Plaintiffs point this Court to Complaint Exhibit 37, which they purport is Kohler's warranty for the generator. Said warranty clearly excludes coverage for damage caused by improper installation. (Exhibit 2, Kohler Limited Warranty, Plaintiffs' Compl., Doc. # 1-37, Page ID 347). It provides, in relevant part:

## Marine Limited Warranty

Your Kohler product has been manufactured and inspected with care by experienced craftsmen. If you are the end user, Kohler Co. warrants, for the period indicated below, each product to be free from defects in materials and workmanship. Repair, replacement, or appropriate adjustment at Kohler Co.'s option will be furnished if the product, upon Kohler Co.'s inspection, is found to be properly installed, maintained, and operated in accordance with Kohler Co.'s instruction manuals. This warranty does not apply to malfunctions caused by damage, unreasonable use, misuse, repair or service by unauthorized persons, or normal wear and tear.

(Emphasis added)(Id.). In short, Kohler's "Marine Limited Warranty" would apply *only* if the product is inspected by Kohler *and* "is found to be properly installed, maintained, and operated in accordance with Kohler Co.'s instruction manuals." (Exhibit 2, Kohler Limited Warranty, Plaintiffs' Compl., Doc. # 1-37, Page ID. 347). Plaintiffs admit the generator was improperly installed, therefore under the plain language of the warranty, the warranty is void.

Warranties in Ohio are governed under Ohio Rev. C. 1302.25 to 1302.31, which incorporate the UCC. Plaintiffs' claim that the warranty is applicable due to some alleged defects fails because, as they affirmatively allege as a part of their claims against Kohler and the other co-defendants, the generator was improperly installed. Plaintiffs' claim under the Magnuson-Moss Act is for an express warranty that cannot go beyond the terms of the written, claimed warranty. The terms are clear: the warranty is subject to the generator being properly installed. Here, Plaintiffs repeatedly allege that the generator and its related parts were not properly installed, voiding the warranty. (Plaintiffs' Compl., Doc. # 1, ¶¶ 105, 127, 310, 316; Exhibit 2, Kohler Limited Warranty, Plaintiffs' Compl., Doc. # 1-37, Page ID. 347). Because Plaintiffs admit the generator was improperly installed, they cannot "demonstrate that *** the item at issue was subject to a warranty." *Temple*, 133 F. App'x at 268. Even if it were subject to a warranty, the generator's improper installation means that it "did not conform to the warranty." *Id.* Plaintiffs' Complaint fails to state a claim under the Magnuson-Moss Act, and judgment on the pleadings is appropriate in Kohler's favor on Count XIV.

**D.    Plaintiffs' Misuse of the Generator Also Voids the Limited Warranty.**

Furthermore, despite their acknowledgement that the generator was improperly installed, Plaintiffs continued to use it.  Because the installation and subsequent design was undertaken by professional yacht builders, it was not foreseeable to Kohler that the generator and associated components would be improperly installed.  Even more unforeseeable though was the fact that Plaintiffs would continue to operate the yacht even after learning the generator was improperly installed. (Plaintiffs' Compl., Doc. # 1, at ¶¶ 152, 315). Consequently, due to their knowing continued misuse of an improperly installed generator, Plaintiffs have voided the Kohler warranty. (Exhibit 2, Kohler Limited Warranty, Plaintiffs' Compl., Doc. # 1-37, Page ID. 347 (the warranty is only valid if the generator "is found to be properly installed, *maintained*, and *operated* in accordance with Kohler Co.'s instruction manuals.")(emphasis added)). Judgment on the pleadings in favor or Kohler is proper.

**E.    Plaintiffs Fail to Allege All Essential Elements of a Design Defect Claim.**

Next, Plaintiffs' Complaint fails to identify the alleged defect and does not allege that the mystery "defect existed at the time the product left the hands of" Kohler. *McDonald v. Ford Motor Co.*, 42 Ohio St. 2d 8, 10, 326 N.E.2d 252 (Ohio 1975). Further, Plaintiffs' Complaint fails to claim that the generator was not merchantable nor fit for any purpose. *See Rogers v. Restore Contracting, Inc.*, No. 2:22-cv-3231, 2024 U.S. Dist. LEXIS 38279, *20 (S.D. Ohio Mar. 5, 2024). As such, the Complaint fails to state a claim, and judgment in favor of Kohler should be entered.

**F.    The Lack of Privity Between Plaintiffs and Kohler is Fatal.**

In addition to the foregoing, Plaintiffs have simply failed to state a prima facie case for breach of implied warranty against Kohler either Ohio law or federal law. In Ohio, "longstanding Ohio jurisprudence provides that purchasers of automobiles may assert a contract claim for breach

of implied warranty only against parties with whom they are in privity." *Curl v. Volkswagen of Am., Inc.*, 114 Ohio St.3d 266, 871 N.E.2d 1141, 1147 (Ohio 2007).  As this Court is well aware, privity is not created where a manufacturer's express warranty is passed to an owner from an authorized dealer. *See Hartman v. Mercedes Benz, USA, LLC*, No. 1:08-cv-03043, 2010 WL 907969, at *7 (N.D. Ohio Mar. 11, 2010). Here, Plaintiffs' Complaint fails to establish privity between Kohler and Plaintiffs. Plaintiffs plainly state that they purchased the subject yacht from Defendant Skipper Marine of Ohio, LLC. (Plaintiffs' Compl., Doc. # 1, at ¶ 27).  Plaintiffs' claims that Kohler failed to act and service the warranty after the fact do not even approach an indicium of privity between Kohler and Plaintiffs.  The lack of privity is fatal to Plaintiffs' claims against Kohler.

**G.     Ohio's Economic Loss Rule Bars Recovery for Damages Unrelated to Some Warranty.**

Lastly, as stated by co-defendants in their Motion to Dismiss, Ohio employs the Economic Loss Rule, which bars recovery for direct and consequential damages related to the loss of an allegedly defective product and limits tort recovery solely to claims for personal injury and property damages (not including the product itself). *See, e.g., Chemtrol Adhesives, Inc. v. Amer. Manufacturers Mutual Ins. Co*, 537 N.E.2d 42 Ohio St. 3d 40, 537 N.E.2d 624, 635 (Ohio 1989)("we hold that a commercial buyer seeking recovery from the seller for economic losses resulting from damage to the defective product itself may maintain a contract action for breach of warranty under the Uniform Commercial Code; however, in the absence of injury to persons or damage to other property the commercial buyer may not recover for economic losses premised on tort theories of strict liability or negligence.").

While the full scope of damages being attributed to Kohler is not clear from Plaintiffs' Complaint, one thing is certain. Plaintiffs negotiated and memorialized their rights regarding the

yacht in the Purchase Agreement they signed with Defendant Skipper Marine of Ohio, LLC. (Purchase Agreement, Plaintiffs' Compl., Doc. # 1-40, Page ID 354-66; *see also* Compl. at ¶ 621). Kohler was not a party to that contract. Therefore, Kohler's alleged liability can only stem from the limited warranty. There are no allegations of personal injury or property damage that arose as a direct result of *anything* associated with the Kohler generator.  Accordingly, if Kohler is liable to Plaintiffs under the warranty, it can only be held liable for the cost to repair or replace the generator.

### III.   CONCLUSION

Assuming the facts Plaintiffs allege are true, Plaintiffs' Magnuson-Moss Act against Defendant Kohler is still untenable. The limited warranty cited by Plaintiffs clearly states the generator would only be covered if it were properly installed, maintained, and/or operated. Plaintiffs admit it was improperly installed, and despite knowing the generator was not installed correctly or working properly, they continued to operate it.  Additionally, Plaintiffs fail to establish every essential element of a design defect claim to carry their warranty claim, which in turn carries their Magnuson-Moss Act Claim.  They even fail to allege privity.  Finally, their sweeping references to and claims about the impact this purchase had on their life and wellbeing cannot be held against Defendant Kohler under the Ohio Economic Recovery Rule.  Consequently, Count XIV of Plaintiffs' Complaint fails to state a claim, and Kohler should be dismissed with prejudice.

Respectfully submitted,

*/s/ Marshal M. Pitchford*
Marshal M. Pitchford (0071202)
mpitchford@dpylaw.com
DICAUDO, PITCHFORD & YODER, LLC
209 South Main Stret, Third Floor
Akron, Ohio 44308
Telephone: 330.762.7477
Facsimile:  330.762.8059

*Attorneys for Defendant Discovery Energy,*
*LLC, as a successor in interest of the Kohler*
*Energy business of Kohler Co.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of October, 2024, the foregoing Motion for Judgment on the Pleadings was served via the Court's electronic filing system.

*/s/ Marshal M. Pitchford*
Marshal M. Pitchford