**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| NORM DETRICK<br>3820 Roberts Ridge<br>Akron, OH 44333<br><br>and<br><br>JUDY DETRICK<br>3820 Roberts Ridge<br>Akron, OH 44333<br><br>   Plaintiffs,<br><br>vs.<br><br>CRUISERS YACHTS -<br>KCS INTERNATIONAL INC. dba<br>CRUISERS YACHTS<br>c/o Corporate Creations Network, Inc.<br>4650 West Spencer Street<br>Appleton, WI 54914-9106<br><br>and<br><br>SKIPPER MARINE OF OHIO, LLC dba<br>SKIPPERBUD'S<br>c/o Corporate Creations Network, Inc.<br>119 East Court Street<br>Cincinnati, OH 45202<br><br>and<br><br>JET THRUSTER MARINE, LLC dba JET<br>THRUSTER NORTH AMERICA<br>1590 East Avenue North<br>Sarasota, FL 34237<br><br>   Defendants. | CASE NO. 5:24-cv-01154<br><br>JUDGE PAMELA A. BARKER<br><br>**FIRST AMENDED COMPLAINT**<br><br>**(Jury Demand Endorsed Hereon)** |

Plaintiffs Norm Detrick and Judy Detrick, by and through undersigned counsel, for their Amended Complaint ("Complaint") against Defendants KCS International Inc. dba Cruisers Yachts ("Cruisers Yachts"); Skipper Marine of Ohio, LLC dba SkipperBud's ("SkipperBud's"); Jet Thruster Marine, LLC dba Jet Thruster North America ("Jet Thruster") (collectively, "Defendants"), state as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Norm Detrick is an individual residing in Summit County, Ohio.

2. Plaintiff Judy Detrick is an individual residing in Summit County, Ohio.

3. Defendant KCS International, Inc. dba Cruisers Yachts is a Wisconsin corporation. Cruisers Yachts manufactured and warranted the 54 Cantius Flybridge, Hull ID# US-CRSSN135A223 (the "54 Fly") purchased by the Detricks and was responsible for providing service and support to the Detricks. Cruisers Yachts is a subsidiary of MarineMax, Inc.

4. Defendant Skipper Marine of Ohio, LLC dba SkipperBud's is an Ohio limited liability company. SkipperBud's is the dealership that sold the 54 Fly to the Detricks and was responsible for providing service and support to the Detricks. SkipperBud's is a subsidiary of MarineMax, Inc.

5. Jet Thruster Marine, LLC dba Jet Thruster North America is a Florida limited liability company. Jet Thruster installed the after-market bow and stern thrusters of the 54 Fly.

6. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 2301, *et seq*.

7. This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 2301, *et seq*. because the amount in controversy exceeds $50,000.

2

8. Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District and Division.

9. The Court has supplemental jurisdiction over the asserted state law claims pursuant to 28 U.S.C. § 1367 because the claims are so related to the federal claim as to form part of the same case or controversy.

## FACTUAL CHRONOLOGY

### *The Detricks' Dream and Particular Purposes for the 54 Fly*

10. In 2021, Plaintiffs Norm and Judy Detrick (the "Detricks") decided to purchase a new yacht in order to pursue their dream and adventure of traveling the Great Loop.

11. The Great Loop is made up of a series of continuous waterways extending approximately 6,000 miles and includes several of the Great Lakes, the Erie Canal, the Hudson River, the Atlantic coast of the eastern United States, the Gulf of Mexico, and the Mississippi River.

12. The Detricks sought a vessel that would be well-suited to this adventure, with the ability to safely and reliably navigate the Great Loop waterways (including fresh water lakes and rivers, and salt water ocean and gulf), travel with speed, and have excellent fuel range, in order to meet the demands of traveling long distances without frequent stops.

13. The Detricks sought a vessel that would have the highest levels of functionality and comfort, both because they would be living in the vessel for extended periods of time and because of significant personal health issues that require climate control and other specific amenities.

14. The Detricks sought a vessel that would have a reliable generator system, designed for use underway with a proven track record of dependability, in order to consistently operate air

conditioners and refrigerators that are essential to managing Judy Detrick's health condition (multiple sclerosis), particularly in warm weather climates of southern segments of the Great Loop.

15.    The Detricks sought a vessel that would have the highest levels of luxury and beauty.

16.    The Detricks sought a vessel that would have the highest levels of quality and dependability.

17.    The Detricks sought a seaworthy vessel with the highest quality in order to meet the demands of being on the ocean and other waterways for substantial periods of time.

18.    The Detricks sought a manufacturer and seller to provide the highest levels of support, and act as partners and advisors during the Great Loop, and during the remainder of the full ownership experience with the 54 Fly.

19.    The Great Loop adventure was of great personal importance to the Detricks—they planned for it to be the trip of a lifetime—and there were significant hurdles related to timing, personal health, and managing business responsibilities, and thus the Detricks sought a manufacturer and seller that could deliver the vessel on the specific timeline they needed..

### Cruisers Yachts' and SkipperBud's Misrepresentations and Deceptive Sales Practices

20.    The Detricks communicated to Cruisers Yachts and SkipperBud's their intended purposes, expectations, and needs as described in Complaint paragraphs 12 to 19 and elsewhere in this Complaint.

21.    The Detricks' decision to purchase the 54 Fly was based on numerous meetings, discussions, representations, promises, and information provided by representatives from Cruisers Yachts and SkipperBud's, which initially included Dan Zenz, Vice President of Cruisers Yachts; Todd Riepe, Regional Vice President of SkipperBud's; Steve McDonald, Sales Manager of SkipperBud's; and Jonathan Meyer, General Manager and Executive Team member of

4

SkipperBud's; and later Mark Pedersen, President of Cruisers Yachts; and Michael Porreca of Cruisers Yachts (collectively referred to by Norm Detrick as the "Promise Team").

22.     Cruisers Yachts' and SkipperBud's representations and promises—including that they would supply a yacht that met the purposes, expectations, and needs described in Complaint paragraphs 12 to 19—convinced the Detricks to purchase a Cruisers Yachts' 54 Cantius Flybridge from SkipperBud's rather than other available dealers and manufacturers.

23.     The Detricks began discussing the purchase of a new yacht with SkipperBud's in or around 2020, and discussions continued into 2021 and 2022 with both Cruisers Yachts and SkipperBud's.

24.     Cruisers Yachts and SkipperBud's held Cruisers Yachts forth to the Detricks as the best yacht manufacturer in the industry, delivering the highest standards of quality and luxury.

25.     The sales materials and information provided to the Detricks by Cruisers Yachts and SkipperBud's, multiple conversations in 2020 and 2021 with SkipperBud's Sales Manager McDonald, SkipperBud's GM Meyer, and SkipperBud's Regional VP Riepe, conversations with Cruisers Yachts' VP Zenz at the 2021 Fort Lauderdale International Boat Show, and Cruisers Yachts' President Pedersen thereafter, touted the 54 Cantius Flybridge model as a well-engineered and refined product that had been on the market for years and stood the test of time.

26.     Cruisers Yachts and SkipperBud's, including Pedersen, Zenz, and Riepe, represented and promised that they would provide the best dealer support system available in the industry, including a network of support along the entirety of the Great Loop; technicians readily available from Cruisers Yachts, SkipperBud's, and their parent company MarineMax; and other third-party contacts available to provide support as needed.

5

27. Cruisers Yachts and SkipperBud's represented and promised that they would provide the best manufacturer support in the industry, with a seamless, team-based approach from the manufacturer and its dealership network, leveraging strong professional and personal relationships.

28. Cruisers Yachts and SkipperBud's represented and promised that they would provide the best service in the industry, including preferred scheduling, expedited parts ordering, and a direct line to top executives and management as needed, including Cruisers Yachts' VP Zenz, SkipperBud's Regional VP Riepe, and Cruisers Yachts' President Pedersen.

29. Cruisers Yachts and SkipperBud's represented and promised that they would provide the best quality control in the industry, including multiple test-driving sessions over multiple days by SkipperBud's to ensure there were no problems or punch list items, and the boat was "standing tall and/or better than new" upon delivery.

a. Todd Riepe, SkipperBud's Regional VP, spoke with Norm Detrick by phone on October 31, 2021, and represented that SkipperBud's would provide a Cruisers Yachts' vessel with no problems and no punch list items upon delivery.

b. On June 8, 2022, at Cruisers Yachts' offices in Oconto, Wisconsin, in a meeting with Mark Pedersen, Cruisers Yachts' President, Dan Zenz, Cruisers Yachts' VP, Michael Porreca of Cruisers Yachts, Todd Riepe, SkipperBud's Regional VP, Steve McDonald, SkipperBud's Sales Manager, Jonathan Meyer, SkipperBud's General Manager, Riepe represented to the Detricks that SkipperBud's and Cruisers Yachts would provide a yacht with no problems or punch list items upon delivery.

c.     At the Fort Lauderdale International Boat Show on October 30, 2021, Steve McDonald, SkipperBud's Sales Manager, represented that the Cruisers Yachts' warranty was a full two-year warranty covering everything from bow to stern.

30.     Cruisers Yachts and SkipperBud's represented and promised that they possessed the best in-house engineering team in the industry that would provide the highest level of engineering, technology, and refinement for the 54 Fly.

31.     Cruisers Yachts and SkipperBud's represented and promised that they would provide the best technical support in the industry from manufacturer and dealer whenever needed, including anything from routine maintenance to vital, time-sensitive matters, with a direct line to top management and executives of both companies if necessary.

32.     SkipperBud's represented and promised that it would provide training for the Detricks and collaborate to identify spare parts, fluids, tools, and other emergency supplies for the Great Loop trip, to be purchased from SkipperBud's.

a.     Todd Riepe, SkipperBud's Regional VP, spoke with Norm Detrick by phone on October 31, 2021, and represented that SkipperBud's would provide training for the Detricks related to operation of the 54 Fly.

b.     Todd Riepe, SkipperBud's Regional VP, spoke with Norm Detrick by phone on October 31, 2021, and represented that SkipperBud's would collaborate to identify and provide spare parts, fluids, tools, and other emergency supplies for the Detricks, and that Jonathan Meyer, SkipperBud's General Manager, would take the lead on this.

c.     Riepe again represented on May 23, 2022, that SkipperBud's would provide training for the Detricks related to operation of the 54 Fly.

7

33.     Cruisers Yachts and SkipperBud's represented and promised that they would provide the best overall experience in the industry throughout the sales, build, and ownership phases, including a personalized and streamlined financing process directly overseen by SkipperBud's finance manager, direct access to Cruisers Yachts' brand manager, and the Detricks would be treated like family.

34.     Cruisers Yachts and SkipperBud's represented and promised that the 54 Fly would provide ease of use and maintenance by an owner/operator, without the need for a professional captain, including clearly labeled components, systems, and electrical wiring within the vessel.

a.      On October 12, 2021, Steve McDonald, SkipperBud's Sales Manager, directed Norm Detrick to the websites referenced in paragraph 38 of the Complaint, which were maintained by or on behalf of Cruisers Yachts. The website content represented that the 54 Fly provided ease of use and maintenance by an owner/operator, without the need for a professional captain, including clearly labeled components, systems, and electrical wiring within the vessel. The website content remained publicly available until well after delivery of the 54 Fly in July 2022.

b.      McDonald also met in person with Norm Detrick at the Fort Lauderdale International Boat Show on October 29, 2021, and while providing a walkthrough of a similar yacht, McDonald represented that SkipperBud's would provide a Cruisers Yachts' vessel that provided clearly labeled components, systems, and electrical wiring within the vessel.

c.      On June 8, 2022, at Cruisers Yachts' offices in Oconto, Wisconsin, in a meeting with Mark Pedersen, Cruisers Yachts' President; Dan Zenz, Cruisers Yachts' VP;

Michael Porreca of Cruisers Yachts; Todd Riepe, SkipperBud's Regional VP; Jonathan Meyer, SkipperBud's General Manager; and Steve McDonald, SkipperBud's Sales Manager; Riepe represented to the Detricks that SkipperBud's and Cruisers Yachts would provide a yacht with ease of use and maintenance by an owner/operator.

d.        On June 8, 2022, Dan Zenz, Cruisers Yachts' VP, hosted a factory tour for the Detricks, including a tour of the wiring department, during which he represented that Cruisers Yachts would provide a vessel with clearly labeled components, systems, and electrical wiring within the vessel, and showed the Detricks how a label for each wire was printed.

35.        Cruisers Yachts and SkipperBud's represented and promised through their sales materials and information that the 54 Fly would provide excellent joystick maneuverability and controllability in close quarters.

a.        On October 12, 2021, Steve McDonald, SkipperBud's Sales Manager, directed Norm Detrick to the websites referenced in paragraph 38 of the Complaint, which were maintained by or on behalf of Cruisers Yachts. The website content represented that the 54 Fly provided excellent joystick maneuverability and controllability in close quarters. The website content remained publicly available until well after delivery of the 54 Fly in July 2022.

b.        On June 8, 2022, at Cruisers Yachts' offices in Oconto, Wisconsin, Dan Zenz, Cruisers Yachts' VP, met with the Detricks in a conference room and also hosted a tour of the production line, during which he represented that the 54 Fly would provide excellent joystick maneuverability and controllability. Riepe, McDonald, and Meyer were also present for the meeting and representations.

9

c.  At the June 8, 2022 factory tour, the Cruisers Yachts and SkipperBud's teams met with the Detricks in a conference room and reviewed and discussed in detail the service plan and quality standards.

d.  Todd Riepe, SkipperBud's Regional VP, represented to Norm Detrick, on or about August 16, 2022, that SkipperBud's would speak to and coordinate with Cruisers Yachts to provide the above-referenced joystick functionality.

e.  Tara Crump, SkipperBud's Operations Manager, represented to Norm Detrick, on or about May 23, 2023, that the joystick worked properly and provided the above-referenced joystick functionality.

36.  In October 2021, Norm Detrick attended the Fort Lauderdale International Boat Show to shop for boats in person and communicated to members of the Promise Team the intended purposes, expectations, and needs described in Complaint paragraphs 12 to 19.

37.  Cruisers Yachts and SkipperBud's understood the Detricks' intended purposes, expectations, and needs related to their anticipated purchase of a yacht, and represented and promised that the 54 Fly would be well-suited to such intended purposes, expectations, and needs.

a.  Steve McDonald, SkipperBud's Sales Manager, met with Norm Detrick in person on October 29, 2021 at the Fort Lauderdale International Boat Show, and represented that SkipperBud's would provide a Cruisers Yachts' vessel that would meet the Detricks' intended purposes, expectations, and needs as described in Complaint paragraphs 12 to 19 and elsewhere in this Complaint.

b.  McDonald and Dan Zenz, Cruisers Yachts' VP, met with Norm Detrick in person on October 30, 2021 at the Fort Lauderdale International Boat Show, and they represented that SkipperBud's and Cruisers Yachts would provide a yacht that would meet

10

the Detricks' intended purposes, expectations, and needs as described in Complaint paragraphs 12 to 19 and elsewhere in this Complaint.

c. Todd Riepe, SkipperBud's Regional VP, spoke with Norm Detrick by phone on October 31, 2021, and represented that SkipperBud's would provide a Cruisers Yachts' vessel that would meet the Detricks' intended purposes, expectations, and needs as described in Complaint paragraphs 12 to 19 and elsewhere in this Complaint.

38. SkipperBud's Sales Manager McDonald directed the Detricks to the Cruisers Yachts' website, Cruisers Yachts' YouTube account, and BoatTEST.com's YouTube account for videos with information regarding the 54 Fly, and Cruisers Yachts and SkipperBud's represented through those sites that the vessel traveled at top speeds of at least 41.5 miles per hour.[1]

a. On October 12, 2021, Steve McDonald, SkipperBud's Sales Manager, directed Norm Detrick to the above-referenced websites, which were maintained by or on behalf of Cruisers Yachts. The website content represented that the 54 Fly traveled at top speeds of at least 41.5 miles per hour. The website content remained publicly available until well after delivery of the 54 Fly in July 2022.

39. Cruisers Yachts' and SkipperBud's represented to the Detricks that the 54 Fly would have fuel range of approximately 285.4 nautical miles per tank of fuel.

a. On October 12, 2021, Steve McDonald, SkipperBud's Sales Manager, directed Norm Detrick to the websites referenced in paragraph 38 of the Complaint, which were maintained by or on behalf of Cruisers Yachts. The website content represented that the 54 Fly would have fuel range of approximately 285.4 nautical miles per tank of fuel.

---

[1] At the time of filing this Complaint, the Cruisers Yachts' YouTube video is available at https://youtu.be/XtIOM3gbX-g?si=JUqdn3csKWfwkdvc, and the BoatTEST.com YouTube videos have been made private.

11

The website content remained publicly available until well after delivery of the 54 Fly in July 2022.

40. Cruisers Yachts' and SkipperBud's represented and promised that the 54 Fly would be furnished with the specific colors selected by the Detricks from any of the colors in Cruisers Yachts' color decks. See Complaint paragraphs 158–178 for additional details regarding who made the representations, when the representations were made, and the substance of the representations.

41. SkipperBud's Regional VP Riepe, spoke with Norm Detrick by phone on October 31, 2021, and represented to the Detricks that SkipperBud's would sell them the 54 Fly for a price at or near cost to minimize the impact of depreciation if the Detricks sold it within a few years.

42. Cruisers Yachts and SkipperBud's, including Cruisers Yachts' President Pedersen, Cruisers Yachts' VP Zenz, and SkipperBud's Regional VP Riepe, represented and promised the Detricks that the 54 Fly would be "standing tall and/or better than new," with no defects or punch list items upon delivery. See paragraph 29 of the Complaint for additional details.

43. In reliance upon the representations and promises described above in Complaint paragraphs 21 to 42, the Detricks decided to move forward with the purchase of the 54 Fly from SkipperBud's, to be manufactured by Cruisers Yachts.

44. Cruisers Yachts' and SkipperBud's representations and promises described in Complaint paragraphs 21 to 42 were false and deceptive.

### Cruisers Yachts' and SkipperBud's Build and Delivery Process

45. Cruisers Yachts commenced building the 54 Fly in or around January 2022 and continued through July 2022, when the vessel was delivered (the "Build Process").

46. In June 2022, while the build was in progress and nearing completion, Cruisers Yachts and SkipperBud's, including Cruisers Yachts' President Pedersen, Cruisers Yachts' VP Zenz, and SkipperBud's Regional VP Riepe arranged for the Detricks to visit Cruisers Yachts'

factory in Oconto, Wisconsin on June 8, 2022 for a comprehensive tour and meetings with top executives and department heads.

47.     During the Build Process, Cruisers Yachts and SkipperBud's again made the representations and promises to the Detricks described above in Complaint paragraphs 21 to 42.

48.     During the Build Process, Cruisers Yachts and SkipperBud's, including Cruisers Yachts' VP Zenz specifically, on June 8, 2022, represented that the 54 Fly would not need bow and stern thrusters because it had a joystick system that would operate effectively and safely without such thrusters. See paragraph 35 of the Complaint for additional details.

49.     During the Build Process, Cruisers Yachts and SkipperBud's, including Cruisers Yachts' VP Zenz specifically, on June 8, 2022, represented that all electrical wiring would be individually labeled to easily diagnose any problems. See paragraph 34 of the Complaint for additional details.

50.      During the Build Process, Cruisers Yachts and SkipperBud's, including Cruisers Yachts' VP Zenz specifically, on June 8, 2022, during a tour of the wiring department at the Cruisers Yachts' factory in Oconto, Wisconsin, represented that all wiring ends would be heat-shrunk to drastically minimize corrosion; an extremely important feature to the Detricks given the intended saltwater usage, which dramatically increases corrosion.

51.     During the Build Process, Cruisers Yachts and SkipperBud's, including Cruisers Yachts' VP Zenz specifically, on June 8, 2022, at the Cruisers Yachts' factory in Oconto, Wisconsin, represented that the 54 Fly would be salt-water ready.

52.     SkipperBud's and Cruisers Yachts promised to deliver the 54 Fly "standing tall and/or better than new" with no punch list items upon delivery of the boat. See paragraph 29 of the Complaint for additional details.

53.     The Detricks relied upon Cruisers Yachts' and SkipperBud's representations and promises described in Complaint paragraphs 47 to 52 in taking delivery of the 54 Fly.

54.     Cruisers Yachts' and SkipperBud's representations and promises described above in Complaint paragraphs 47 to 52 were false and deceptive.

### *Delivery and First Attempt at the Great Loop Adventure in 2022*

55.     The Detricks' took delivery of the 54 Fly on or about July 25, 2022.

56.     Immediately after taking delivery of the 54 Fly, the Detricks identified numerous material defects, safety concerns, warranty issues, and repair items, and notified Cruisers Yachts and SkipperBud's on August 2 and 3, 2022. Attached hereto as Exhibits 1 and 2 are true and accurate copies of the referenced communications.

57.     The Detricks intended to take the 54 Fly on a substantial segment of the Great Loop as soon as possible after taking delivery.

58.     However, the Great Loop trip was delayed multiple times during August, September, and October 2022 due to numerous material defects and substantial impairments of the 54 Fly that rendered it unsafe and not seaworthy and were not remedied in a timely manner by Cruisers Yachts and SkipperBud's.

59.     In or around August and September 2022, Cruisers Yachts and SkipperBud's performed detailed measurements based on the waterline of the 54 Fly to determine if it could meet specific height and bridge clearance requirements in the Great Loop.

60.     Despite knowing that the Detricks purchased the 54 Fly for the Great Loop, the 54 Fly's height exceeded the height clearance requirements at certain locations in the Great Loop.

61.     Cruisers Yachts and SkipperBud's developed a burdensome workaround to reduce height by manually removing components for lower clearance locations in the Erie Canal, and then reinstalling after clearing.

14

62. In or around August and September 2022, the Detricks, with the cooperation and approval of Cruisers Yachts and SkipperBud's, arranged for installation of bow and stern thrusters by Jet Thruster to remedy defects with the 54 Fly's joystick system.

63. The joystick mechanism, which Cruisers Yachts and SkipperBud's misrepresented to be safe and effective and have excellent maneuverability and controllability, including for docking and undocking, did not work properly and was exacerbated by the flybridge of the vessel creating a sail effect.

64. Jet Thruster's installation of bow and stern thrusters caused delays and further compressed the Great Loop departure timeline, as set forth in Complaint paragraphs 199 to 209.

65. In or around September 2022, the Detricks were operating the 54 Fly in Lake Erie, near Marblehead, Ohio, and ran aground while underway, due to malfunctioning of the Garmin system and autopilot functions caused by defective installation of the systems by Cruisers Yachts.

66. The Detricks incurred substantial costs to repair the damage to the 54 Fly related to running aground, and it caused further delays and pressure on the Great Loop departure timeline.

67. During August, September, and October 2022, the Detricks provided notice of numerous warranty issues, material defects, and substantial impairments that affected the vessel's safety and value, and caused unusual and excessive maintenance of the 54 Fly. Attached hereto as Exhibits 3, 4, 5, 6, 7, 8, 9, 10, 11, and 12 are true and accurate copies of the referenced communications.

68. The Detricks' Great Loop departure had a hard cut-off date in late September 2022, because the Erie Canal locks closed for the season in mid-October 2022.

69. Cruisers Yachts' and SkipperBud's failure to timely remedy the 54 Fly's defects and impairments created pressure on the Great Loop departure timeline, and threatened the

15

Detricks' enjoyment of the trip due to changing weather, seasonal business closures, lock closures, possible stranding in the locks necessitating hauling out for storage, and risk of breakdowns.

70. The 54 Fly remained in a constant state of repair and service due to the numerous material defects and substantial impairments that affected the vessel's safety and value, and created unusual and excessive maintenance of the 54 Fly; these problems existed at the time of delivery and persisted through October 2022 and beyond, because Cruisers Yachts and SkipperBud's failed to resolve them within a reasonable amount of time and reasonable number of attempts.

71. The Detricks' first Great Loop attempt in 2022 was eventually cancelled due to Cruisers Yachts' and SkipperBud's failure to timely make the 54 Fly safe, seaworthy, and ready for the Great Loop.

72. From the time of delivery until termination of the first Great Loop attempt, Cruisers Yachts and SkipperBud's continued to make representations and promises as set forth in Complaint paragraphs 12 to 19 and 21 to 42, and that they would remedy the warranty issues, material defects, and substantial impairments of the 54 Fly as soon as possible and within a reasonable amount of time.

### *Failed Repairs and Second Attempt at the Great Loop Adventure in 2023*

73. After the failed first Great Loop attempt, the Detricks placed the 54 Fly in heated storage for the 2022–2023 winter in order to facilitate and maximize Cruisers Yachts' and SkipperBud's ability to remedy the numerous problems with the vessel.

74. However, minimal progress was made in resolving the issues with the 54 Fly, and the Detricks continued to experience an overwhelming and unreasonable number of problems with the 54 Fly throughout 2022 and 2023, set forth in additional detail below.

75. In or around December 2022, Cruisers Yachts assigned Director of Customer Service Ferfecki to manage and oversee the work on the 54 Fly and prepare for the second Great Loop attempt, including weekly status update meetings and regular written updates.

76. On a regular and ongoing basis during 2022 and 2023, Norm Detrick provided an updated list of the 54 Fly's warranty and repair items to Cruisers Yachts and SkipperBud's via email and scheduled calls with company representatives. See previously referenced Exhibits 3 to 12. In addition, attached hereto as Exhibits 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, and 26, are true and accurate copies of additional referenced communications. The referenced exhibits are not a complete or exhaustive collection of such communications.

77. Cruisers Yachts' and SkipperBud's systems and processes for warranty and repair work is archaic and highly ineffective, including a service coordinator who lacked basic and necessary technical knowledge, an understaffed warranty department, and layers of approval between Cruisers Yachts and SkipperBud's that intentionally and unintentionally delayed or avoided performance of the work.

78. Cruisers Yachts and SkipperBud's often failed to update the warranty and repair list or communicate with the Detricks regarding work performed, including nature and scope of work, status of projects, diagnosis of problems, anticipated timing, completion of items, and other relevant information.

79. Cruisers Yachts' and SkipperBud's failure to provide status updates necessitated extraordinary additional efforts by Norm Detrick to obtain relevant information and ensure progress as to resolution of the problems with the 54 Fly.

80. In addition, the constant state of repair and service forced the Detricks to spend approximately 2–6 hours nearly every time they used the 54 Fly, to inspect the vessel, identify any

17

incomplete or defective work, and damage caused by technicians, and follow up with Cruisers Yachts and SkipperBud's regarding ongoing and new issues.

81.     The Detricks again intended to take the 54 Fly on a substantial segment of the Great Loop from Lake Erie in Ohio to the Atlantic Coast in South Carolina, as soon as possible in 2023, when weather and other conditions permitted.

82.     Cruisers Yachts and SkipperBud's continued work on the 54 Fly in 2023, but the vessel was not safe or seaworthy in time to depart for the Great Loop in Spring 2023, as numerous material defects and substantial impairments (described herein) affected its safety and value, created unusual and excessive maintenance of the 54 Fly, and persisted without remedy.

83.     The problems with the 54 Fly included substantial design and engineering defects that required consultation with a naval architect, sea trials, and extensive testing and assessment of the vessel by Cruisers Yachts and SkipperBud's.

84.     The sea trials were performed with the 54 Fly loaded and unloaded, and demonstrated many problems with the vessel in both instances—including that the center of gravity was awry, the swim platform dragged in the water, the top speed was only 29 miles per hour, and the engines overheated.

85.     During the time period of July 2023 to September 2023, the 54 Fly's engines overheated on at least 12 occasions, in a variety of conditions, causing irreparable damage to their performance, dependability, and longevity, due to a defectively designed hull.

86.     As a result, Cruisers Yachts and SkipperBud's made modifications to the shape of the 54 Fly's hull, to remedy the vessel's underperformance and overheating, which took at least 10 attempts and multiple months of an archaic process of trial and error to complete.

18

87.     The second Great Loop attempt was again delayed multiple times in 2023 due to material defects and substantial impairments that rendered the 54 Fly unsafe and not seaworthy.

88.     The Detricks' Great Loop departure again had a hard cut-off date in late September 2023, because the Erie Canal locks closed for the season in October 2023.

89.     In September 2023, Cruisers Yachts and SkipperBud's communicated that the 54 Fly was safe, seaworthy, and ready for the Great Loop trip.

90.     The Detricks requested that SkipperBud's conduct a test drive with Norm Detrick to confirm readiness for the Great Loop.

91.     During the test drive with SkipperBud's GM Meyer, multiple malfunctions occurred, including with the Garmin system, the refrigerator, and the generator overheating.

92.     During the test drive, Norm Detrick brought the Garmin system malfunctions to Meyer's attention, but Meyer assured him it was working properly.

93.     Norm Detrick and Meyer discussed contingency plans and work-arounds that might be sufficient to complete the trip, despite ongoing defects and impairments with the 54 Fly.

94.     Based on Cruisers Yachts' and SkipperBud's assurances, and the fact that it was the final window of opportunity to travel the Great Loop in 2023, the Detricks embarked on the trip in late September 2023, with a few days to spare before the Erie Canal lock closures.

95.     However, the trip was eventually cut short due to multiple material defects and substantial impairments that created significant safety hazards and damage to the 54 Fly.

96.     At the outset of the Great Loop trip, the Detricks learned that Cruisers Yachts had upgraded the Garmin system software, which erased the Detricks' custom settings, including removing the shallow water alarm, and rendered it significantly more dangerous to operate.

19

97.     Cruisers Yachts negligently implemented the Garmin system software update, without any testing sufficient to identify and fix bugs or failures and no backup of user data in the system settings prior to update.

98.     Cruisers Yachts negligently performed the Garmin system software update, without notice to the Detricks prior to their Great Loop departure and no checklist to confirm that the system was functional and that all data and settings were intact and functional after the update.

99.     In addition, Cruisers Yachts' Garmin system update caused additional malfunctions, including entirely blacking out the 54 Fly's screens and instrument panel displays at night, which created a substantial danger of harm to the Detricks.

100.    At the outset of the Great Loop trip, the Detricks learned that Cruisers Yachts had failed to apply necessary protective coatings to newly installed sea strainers and engine pickups, which contributed to the engines and generator overheating.

101.    During the Great Loop trip, the 54 Fly's refrigerator failed and had to be replaced.

102.    The 54 Fly's refrigerator is an essential component of the vessel for the Detricks, due to temperature-sensitive medication that Judy Detrick needs for her health conditions—a malfunctioning refrigerator creates a serious threat to her health and wellbeing, which Cruisers Yachts and SkipperBud's, including the members of the Promise Team were well aware of.

103.    During the Great Loop trip, the water filtration system flooded the 54 Fly's bilge, triggering alerts that the vessel was taking on water at a dangerous rate and at risk of sinking.

104.    As a result of the water filtration system malfunction, and apparent emergency, the Detricks were forced to divert their path in order to have the 54 Fly assessed and serviced.

105.    During the Great Loop trip, the 54 Fly's generator overheated.

20

106.    During the Great Loop trip, in order to prevent the generator from repeatedly overheating, Norm Detrick had to replace the generator impellors multiple times per week.

107.    During the Great Loop trip, as a work around to reduce the risk of the generator overheating, the Detricks had to employ a burdensome workaround where they would delay utilizing the generator for 10–45 minutes when leaving the dock and then stop using the generator for 10–45 minutes before returning to the dock.

108.    This generator workaround created significant additional labor and diminished the reliability and usefulness of the 54 Fly's electrical supply and components that relied on it, including the GPS, radar system, appliances, and other equipment.

109.    During the Great Loop trip, the 54 Fly's windshield wipers repeatedly malfunctioned, which adversely affected visibility and safety while underway.

110.    During the Great Loop trip, the 54 Fly's fuel gauges persistently malfunctioned, which adversely affected the ability to safely and appropriately refill the fuel tank, made trip planning much more difficult, and made operating offshore less safe.

111.    During the Great Loop trip, the 54 Fly's fuel usage information displays provided inaccurate information. which adversely affected the ability to monitor fuel usage data and status.

112.    During the Great Loop trip, the angle of the 54 Fly in the water and the center of gravity were continuously awry and caused poor performance, unlevel surfaces, swamping of the swim platform, impaired visibility over the bow of the boat, and other problems.

113.    During the Great Loop trip, the steering wheel of the 54 Fly malfunctioned and locked up while underway in the Erie Canal, due to negligent installation by Cruisers Yachts.

114.    Cruisers Yachts provided a Volvo Penta dealership in Stony Point, New York to repair the steering wheel, but the technician negligently and improperly performed the repair.

21

115.    Cruisers Yachts then provided its own technicians to repair the steering wheel in Atlantic City, New Jersey, but the technician also negligently and improperly performed the repair.

116.    Due to the repeated failures to repair the steering wheel, the Detricks independently hired a technician who properly repaired the failed steering wheel.

117.    Throughout the Great Loop trip, the 54 Fly's defectively-installed Garmin system, including GPS, radar, autopilot, and dynamic positioning system, repeatedly malfunctioned, which rendered the 54 Fly unsafe and not seaworthy.

118.    As a result of the numerous material defects and substantial impairments experienced during the Great Loop trip, Cruisers Yachts agreed to take custody and control of the 54 Fly in Atlantic City, New Jersey to remedy the problems.

119.    The defectively installed and malfunctioning Garmin system caused the 54 Fly to run aground enroute to a MarineMax dealership near Atlantic City, New Jersey in October 2023.

120.    The Detricks incurred substantial costs to repair the damage to the 54 Fly related to running aground, and Cruisers Yachts refused to pay the costs or provide insurance coverage, after stating that it would do so.

121.    When Cruisers Yachts took control of the 54 Fly in Atlantic City, the Detricks discovered the paint on the fiberglass hull repairs applied by Cruisers Yachts had failed and required reapplication due to Cruisers Yachts negligence and poor workmanship.

122.    When Cruisers Yachts took control of the 54 Fly in Atlantic City, the Detricks discovered the failure of the Propspeed protective coatings on the propellors, engine raw water pickups, generator raw water pickup, generator sea strainer, air conditioner raw water pick up, SeaKeeper raw water pickup, pods, and related surfaces under the boat, which required reapplication for a third time due to Cruisers Yachts' negligence and poor workmanship.

22

123. While the 54 Fly was out of the water for repairs in Atlantic City, Cruisers Yachts and SkipperBud's technicians and representatives frequently called, texted, and sent photos regarding the issues to company management and representatives.

124. Following the disastrous events that occurred during the portion of the 2023 Great Loop trip from Lake Erie to Atlantic City, Cruisers Yachts and SkipperBud's, including Cruisers Yachts' Director of Customer Service Ferfecki's actions (and inactions) to assist the Detricks were unreasonably insufficient and inadequate, and placed them in significant danger.

125. Ferfecki regularly communicated with representatives, management, and legal counsel from Garmin regarding the problems with the Garmin system, and Cruisers Yachts, SkipperBud's, and Ferfecki knew or should have known that the Detricks were in danger of bodily harm and damage to the 54 Fly due to the defective and malfunctioning Garmin system.

126. Cruisers Yachts, SkipperBud's, and Ferfecki failed to communicate with or warn the Detricks regarding the significant danger caused by the defects and repeated malfunctions of the Garmin system, including the GPS, radar, autopilot, dynamic positioning system, instrument displays, and warning indicators and alarms (for example, engine overheating, low oil pressure, shallow water, transmission fluids, etc.).

127. The Detricks were forced to cut short the Great Loop trip in 2023 due to multiple material defects and substantial impairments and because Cruisers Yachts, SkipperBud's, and Ferfecki failed to make the vessel sufficiently safe and seaworthy to complete the journey.

128. The Detricks incurred substantial costs, including travel expenses, lodging, and hiring a captain to transport the vessel, after the Great Loop trip was cut short.

129. Cruisers Yachts and SkipperBud's refused to pay for any of the Detricks' travel expenses, lodging, or captain's fees related to the terminated Great Loop trip.

23

130. The 54 Fly remained in a constant state of repair and service due to the numerous material defects and substantial impairments that affected its safety and value, and created unusual and excessive maintenance of the 54 Fly; these problems existed at the time of delivery and persisted through October 2023 and beyond, because Cruisers Yachts and SkipperBud's failed to remedy within a reasonable amount of time and reasonable number of attempts.

131. On a regular and ongoing basis during 2022 and 2023, Norm Detrick provided an updated list of the 54 Fly's warranty and repair items to Cruisers Yachts and SkipperBud's via email and scheduled calls with company representatives.

132. From the time of delivery until termination of the second attempt at the Great Loop, Cruisers Yachts and SkipperBud's continued to make representations and promises as set forth in Complaint paragraphs 12 to 19, 21 to 42, and 72, and that they would remedy the warranty issues, material defects, and substantial impairments of the 54 Fly as soon as possible and within a reasonable amount of time.

133. In or around late Spring 2023, Norm Detrick asked Cruisers Yachts and SkipperBud's, including Cruisers Yachts' President Pedersen, SkipperBud's GM Meyer, and Cruisers Yachts' VP Zenz, to build the Detricks a new boat that met the promises regarding top speed and performance, and if that was not possible to do so, to reduce the price of the 54 Fly by the percentage that it failed to live up to the promised speed.

134. In or around Summer 2023, Norm Detrick again asked Cruisers Yachts, including Director of Customer Service Ferfecki, to build the Detricks a new boat that met the promises regarding top speed and performance, and if that was not possible to do so, to reduce the price of the 54 Fly by the percentage that it failed to live up to the promised speed.

24

135.    On September 26, 2023, Norm Detrick emailed Ferfecki and SkipperBud's GM Meyer and asked them to communicate to the leadership of Cruisers Yachts and SkipperBud's that the 54 Fly would never perform or be dependable as promised and demand that they build a new yacht for him to replace the 54 Fly. Attached hereto as Exhibit 27 is a true and accurate copy of the referenced email.

136.    On October 5, 2023, Judy Detrick emailed Cruisers Yachts and SkipperBud's, including several members of the "Promise Team," and expressed her disappointment with numerous failures of the 54 Fly, and asked them to take the vessel back. Attached hereto as Exhibit 28 is a true and accurate copy of the referenced email.

137.    As of the filing of this Amended Complaint, Cruisers Yachts and SkipperBud's have not provided a new yacht, reduced the price, or taken back the 54 Fly and provided a refund to the Detricks.

### *Continuing Material Defects and Substantial Impairments*

138.    After the Detricks' 2023 Great Loop trip was cut short, the 54 Fly was located in Atlantic City, New Jersey, awaiting repairs and work to be performed by Cruisers Yachts.

139.    On or about October 5, 2023, the Detricks again provided Cruisers Yachts and SkipperBud's with a list of warranty issues, material defects, and substantial impairments with the 54 Fly that needed to be remedied. Attached hereto as Exhibit 29 is a true and accurate copy of the referenced communication.

140.    The 54 Fly was scheduled to be docked in Hilton Head, South Carolina in or around October 2023, but Cruisers Yachts provided no plan and took no action regarding transporting the 54 Fly and getting the Detricks home in the interim, forcing the Detricks to bear the responsibility and costs of moving the vessel to South Carolina and traveling back to Ohio themselves.

141.    In South Carolina, in or about November 2023, the 54 Fly broke down again, this time due to malfunctioning of the electrical iso boost system and the Seakeeper system.

142.    Cruisers Yachts' Director of Customer Service Ferfecki instructed Norm Detrick to move the 54 Fly to a different boat yard to perform repairs to the malfunctioning electrical iso boost system, but that boat yard informed him that it could not be scheduled for two to three weeks.

143.    Moving the 54 Fly would have incurred additional dockage costs to the Detricks, and in addition, Captain Fink recommended against moving the 54 Fly due to the risks associated with shallow water along the route to the other boat yard.

144.    Captain Fink worked with Cruisers Yachts and SkipperBud's to assess the problems and identified a third-party technician independently to perform the repairs in a timely manner and without moving the 54 Fly.

145.    On December 14, 2023, the Detricks again provided Cruisers Yachts and SkipperBud's with a list of the 54 Fly's defects and impairments to be remedied. Attached hereto as Exhibit 30 is a true and accurate copy of the referenced communication.

146.    On or about March 18, 2024, the Detricks notified Cruisers Yachts and SkipperBud's of an error message related to the Volvo Penta transmission.

147.    On March 19, 2024, the Detricks traveled from Ohio to South Carolina for vacation and to spend a week on the 54 Fly.

148.    When the Detricks arrived, the 54 Fly's door and lock to the interior of the vessel malfunctioned, making it impossible for them to gain access to the vessel.

149.    Norm Detrick emailed Cruisers Yachts' Director of Customer Service Ferfecki and SkipperBud's GM Meyer and notified them of the broken door lock.

150. On March 19, 2024, Ferfecki responded to Norm Detrick as follows: "Norm - we have been instructed by our counsel that we are no longer able to work directly with you. Any request for warranty or technical assistance will need to be sent through the proper legal channels. The vessel is still covered underneath the Cruisers Yachts Limited Warranty until sometime in July of this year."

151. Cruisers Yachts and SkipperBud's failed and refused to provide any warranty or technical support for the broken door and lock, which derailed the Detricks' vacation plans and forced them to independently hire a technician to repair the broken lock and gain access.

152. On or about April 2, 2024, the Detricks again provided Cruisers Yachts and SkipperBud's with a list of defects and impairments to be remedied. Attached hereto as Exhibit 31 is a true and accurate copy of the referenced communication.

153. On or about May 9, 2024, the Detricks again provided Cruisers Yachts and SkipperBud's with a list of defects and impairments to be remedied. Attached hereto as Exhibit 32 is a true and accurate copy of the referenced communication.

154. On or about June 10, 2024, the Detricks again provided Cruisers Yachts and SkipperBud's with a list of defects and impairments to be remedied. Attached hereto as Exhibit 33 is a true and accurate copy of the referenced communication.

155. As of the filing of this action, Cruisers Yachts and SkipperBud's last performed or paid for any warranty or repair work in or around mid-November 2023, and have failed and/or refused to perform any warranty or repair work on the 54 Fly since that time.

156. The 54 Fly has remained in a constant state of repair and service due to the numerous substantial impairments that affected its safety and value, and created unusual and excessive maintenance of the 54 Fly; these problems existed at the time of delivery and persisted

27

through the time of filing this action, as a result of the failure and refusal of Cruisers Yachts and SkipperBud's to remedy such problems within a reasonable amount of time or reasonable number of attempts.

157.    Since the initial build and delivery of the 54 Fly to present, Cruisers Yachts and SkipperBud's repeatedly promised the Detricks a vessel "standing tall and/or better than new," but failed to deliver on their promises, made numerous misrepresentations regarding the 54 Fly, and failed to fulfill their warranty responsibilities.

**DETAILED FACTUAL BACKGROUND REGARDING MISREPRESENTATIONS, MATERIAL DEFECTS, AND SUBSTANTIAL IMPAIRMENTS**

*Specific Color Selections*

158.    On October 29 and 30, 2021, when Norm Detrick attended the Fort Lauderdale International Boat Show, he asked Cruisers Yachts and SkipperBud's, including SkipperBud's Sales Manager McDonald, if they could provide specific colors for the 54 Fly selected by the Detricks from any of the colors in Cruisers Yachts' color decks.

159.    Cruisers Yachts and SkipperBud's initially indicated that specific color selections were not available for the 54 Fly, but later changed course when the Detricks communicated that they would not proceed with the purchase if the colors were not available.

160.    Cruisers Yachts' and SkipperBud's representatives, including SkipperBud's Sales Manager McDonald and Cruisers Yachts' VP Zenz, promised Norm Detrick on October 30, 2021, that they would furnish the 54 Fly with the specific colors selected by the Detricks from any of the colors in Cruisers Yachts' color decks.

161.    Norm Detrick and SkipperBud's Sales Manager McDonald discussed the desired colors, and agreed that there would be a formal sign-off process following the Detricks' review of

28

color samples provided by Cruisers Yachts and SkipperBud's to avoid any misunderstanding about the colors.

162.    On October 30, 2021, Norm Detrick and Zenz discussed the desired colors, and agreed that the color selection process would occur in 2022, after the Detricks reviewed color samples.

163.    The preliminary purchase/retail order form in November 2021 did not indicate specific colors because it was intended to define pricing and accessories only, and the parties had agreed that color selections would be made once the 2022 color samples were provided by Cruisers Yachts and SkipperBud's.

164.    In December 2021, Norm Detrick emailed SkipperBud's Sales Manager McDonald regarding color samples, and McDonald responded that, "Next step is to get the pricing for all the special requests. Cruisers is supposed to get that to me after the first of the year, and then you will pick out your colors. You should receive the swatches after the first of the year as well. On Monday, I will follow up with Cruisers on both of these issues."

165.    On January 6, 2022, McDonald informed Norm Detrick that he had left a message with Cruisers Yachts and expected the color samples to arrive the next day.

166.    On January 7, 2022, the Detricks received fabric samples with no indication of what items they corresponded to, but did not receive any color samples.

167.    On January 12, 2022, McDonald informed Norm Detrick that, "I have called and left Dan [Zenz] a message as well as sent him a text. I have also left a message for a couple of people at Cruisers to see what is going on, and once I hear back I will let you know."

168.    On January 18, 2022, the remaining color samples arrived.

29

169.    On February 26, 2022, Norm Detrick emailed Michael Porreca of Cruisers Yachts, and asked, "Can you reach out and see if you can get the colors of the 54 Cantius that was at the Fort Lauderdale boat show."

170.    On May 14, 2022, Norm Detrick again emailed Porreca and asked when they could review the remaining color selections for the 54 Fly, including floors, countertops, and sidewalls of the atrium. Porreca responded, stating "As we sit right now we don't have any additional color decisions. The floor is set to match the cabinets and the walls and counters are standard equipment. Attached is your original order with all of color choices."

171.    On May 15, 2022, Norm Detrick responded by email to Porreca and expressed that there was a "huge misunderstanding about color selections," reiterated the prior communications about color selections and the agreement to provide the colors seen at the boat show, and that the color selections had been very important to the Detricks since "day one."

172.    The Detricks continued to work with Cruisers Yachts and SkipperBud's to obtain the promised color selections, but they failed to provide them upon delivery of the 54 Fly in July 2022.

173.    The Detricks relied upon the representations of Cruisers Yachts and SkipperBud's regarding the availability of the specific requested colors for the 54 Fly in deciding to move forward with the purchase.

174.    Had the Detricks known that the colors would not be available, they would not have signed the preliminary purchase order or moved forward with the purchase.

175.    Cruisers Yachts and SkipperBud's knew that the requested colors were essential to the Detricks' purchase of the 54 Fly.

30

176. Cruisers Yachts and SkipperBud's, intentionally and knowingly misrepresented the availability of the requested colors in order to persuade the Detricks to move forward with the purchase.

177. When the 54 Fly was delivered in July 2022, it did not have the colors requested by the Detricks and promised by Cruisers Yachts and SkipperBud's.

178. Cruisers Yachts and SkipperBud's deceptive actions forced the Detricks to accept an unsatisfactory standard package of colors, and Cruisers Yachts and SkipperBud's failed to fulfill the promises and representations they made regarding color selections.

### *Joystick – Material Defect and Substantial Impairment*

179. The 54 Fly has a joystick system that is used to maneuver the boat.

180. Shortly after delivery of the 54 Fly, the Detricks observed that the joystick system lacked appropriate responsiveness and precision, including 1 to 4 second non-patternable delays in the vessel responding to movements of the joystick.

181. This created a significant safety hazard and risk of harm to the vessel, particularly when operating in crosswinds or maneuvering in tight spaces, such as docking the boat with only inches to spare on either side.

182. In or around May 2022, the Detricks discussed the 54 Fly with their professional boat captain, Captain Fink, who was experienced in operating similar models of Cruisers Yachts boats, and he told them they would need to install bow thrusters to appropriately control the boat because the joystick alone was not capable of safely maneuvering the vessel, particularly in the case of the 54 Fly because of the size of the boat and increased windage of a flybridge model.

183. In or around August 2022, the Detricks notified Cruisers Yachts and SkipperBud's of the problems with the joystick.

31

184. Cruisers Yachts, SkipperBud's, and specifically Cruisers Yachts' VP Zenz, initially responded to the Detricks' concerns by communicating that there was no problem with the joystick system and that thrusters were not necessary to effectively operate the 54 Fly.

185. Cruisers Yachts and SkipperBud's, including Zenz, SkipperBud's Regional VP Riepe, and Cruisers Yachts' President Pedersen knew or should have known that the 54 Fly could not safely operate with only the joystick system, particularly when operating in crosswinds and/or maneuvering in tight spaces.

186. On August 15, 2022, Josh Delforge, VP of Operations and Engineering for Cruisers Yachts, emailed Grayson Gerndt, Cruisers Yachts' Engineering Manager, regarding the Detricks' inquiry about a bow thruster, stating, "Our recent 54F customer is requesting some information from us to potentially install a bow thruster. Could we put together a package showing a centerline section with floors, bulkheads, etc. so a thruster motor and tube can be placed?"

187. On August 16, 2022, Norm Detrick again notified Cruisers Yachts and SkipperBud's, including SkipperBud's Regional VP Riepe and SkipperBud's GM Meyer, that the joystick was not able to adequately control the boat in crosswinds of 15 mph or more, and Riepe responded by email to Norm Detrick that he had notified Cruisers Yachts of the issue.

188. On August 22, 2022, Norm Detrick again notified SkipperBud's that the joystick was not working properly in crosswinds of 15 mph or more.

189. SkipperBud's provided a price quote to install the bow and stern thrusters, but were unable to accommodate the schedule necessary to complete the installation so that the Detricks could depart for the Great Loop before Erie Canal closures in October 2022.

190. The Detricks identified a third-party installer that could meet their Great Loop departure timeline.

191. On August 23, 2022, Grayson responded to Delforge's August 15 email and added Cruisers Yachts' VP Zenz to the communications, stating, "Here is the section on the 54 Flybridge. From a high level it looks like the thruster would fit between the fwd water tank and the shower sump. The tank would need to get removed for access and they may have to cut access in either the head floors or the stringers to glass the tube in at the hull side."

192. Cruisers Yachts' VP Zenz responded and provided a drawing to give to the third party installer of the thrusters, stating, "Here is a drawing from engineering on the bow thruster. If the company has any questions please have them contact Grayson."

193. On August 24, 2022, SkipperBud's GM Meyer forwarded the engineering drawings from Cruisers Yachts to Norm Detrick.

194. The drawings provided by Cruisers Yachts and SkipperBud's were subsequently given to Jet Thruster, the company hired by the Detricks to install the bow and stern thrusters.

195. Cruisers Yachts and SkipperBud's provided essential information and support for the installation of the bow and stern thrusters, including participating in a pre-installation survey via video conference, making detailed measurements, and developing a plan for the installation.

196. SkipperBud's was actively involved in the installation process, including supervising and coordinating the work, supplying batteries and parts, and maintaining regular communication with Cruisers Yachts and Jet Thruster regarding the installation.

197. The Detricks entered into a contract with Jet Thruster to install the bow and stern thrusters. Attached hereto as Exhibit 34 is a true and accurate copy of the Jet Thruster invoice.

198. Jet Thruster did not appropriately staff the installation job, did not complete the installation work, and performed in an unworkmanlike manner, resulting in delays, defects, and additional involvement by SkipperBud's throughout the project.

33

199.    During the installation of the bow and stern thrusters in August 2022, Jet Thruster negligently and unnecessarily drilled a 3-4 inch hole in the hull, below the waterline, that subsequently required repair, which was paid for by the Detricks.

200.    SkipperBud's GM Meyer instructed Jet Thruster not to drill any more holes until all parties measured and agreed to the locations.

201.    Jet Thruster then negligently and unnecessarily drilled two additional holes in the hull, below the waterline, that subsequently required repair, which was paid for by the Detricks.

202.    Jet Thruster failed to install a wired switch as agreed upon by the parties, and instead provided only a wireless switch that does not function properly.

203.    Jet Thruster improperly wired batteries which caused them to overheat and melt the battery terminals, damaging the batteries and creating a substantial risk of fire.

204.    Jet Thruster's technician left before the installation project was complete, stating that "he had a flight to catch."

205.    Jet Thruster did not complete the entirety of the installation, including failing to complete substantial portions of the electrical wiring, reinstallation of the shower/gray water pump, repair of leaks related to the front hose flanges, and improperly placed batteries.

206.    SkipperBud's technicians repaired the defective and malfunctioning components of Jet Thruster's installation, and the repairs were paid for by the Detricks.

207.    SkipperBud's technicians performed the portions of the installation not completed by Jet Thruster, and their work was paid for by the Detricks.

208.    At no time before or during the installation did Cruisers Yachts or SkipperBud's recommend against installing the bow and stern thrusters.

209. At no time before or during the installation did Cruisers Yachts or SkipperBud's state or express any concern about the additional weight of the thrusters negatively affecting the performance, speed, center of gravity, or otherwise impair the 54 Fly.

210. At no time before or during the installation did Cruisers Yachts or SkipperBud's inform the Detricks that installing the bow and stern thrusters might negatively affect the vessel's performance or center of gravity.

211. On the contrary, Cruisers Yachts and SkipperBud's actually approved, assisted, and participated in the installation of the bow and stern thrusters, by their course of conduct throughout the approximately two month installation process.

212. The Detricks arranged and paid for installation of the bow and stern thrusters by Jet Thruster to remedy defects with the 54 Fly's joystick system, that Cruisers Yachts and SkipperBud's failed to remedy without charge within a reasonable amount of time or reasonable number of attempts.

### *Center of Gravity and Bow Angle – Material Defect and Substantial Impairment*

213. Shortly after delivery of the 54 Fly, the Detricks observed that the vessel had a "bow high attitude," meaning that the 54 Fly sat in the water with the bow higher and the stern lower than it should be.

214. Because the bow angle and center of gravity of the 54 Fly are awry, it has caused performance problems, unlevel surfaces, swamping of the rear swim platform, a "rooster tail" of water behind the boat when under way, reduced visibility over the bow, and other problems.

215. Cruisers Yachts and SkipperBud's represented and promised that they would provide a vessel with excellent visibility and sight lines, however, the bow angle of the 54 Fly substantially impairs visibility looking forward over the bow, making it necessary to stand on a platform at all times while underway in order to safely maneuver the vessel.

35

216. The Detricks initially notified Cruisers Yachts and SkipperBud's regarding the bow angle and center of gravity shortly after taking delivery of the vessel in late July 2022.

217. On August 16, 2022, Norm Detrick notified SkipperBud's Regional VP Riepe and SkipperBud's GM Meyer by email of the "bow high attitude," and Riepe responded that he had notified Cruisers Yachts of the issue.

218. On August 22, 2022, Norm Detrick again notified SkipperBud's of the bow high attitude.

219. On September 2, 2022, Norm Detrick again notified SkipperBud's of the bow high attitude and asked SkipperBud's Regional VP Riepe for the opportunity to discuss the issue with Cruisers Yachts' engineering department.

220. On September 20, 2022, Norm Detrick emailed Riepe, provided a video documenting the 54 Fly's angle in the water, and asked for a status update regarding the engineering review by Cruisers Yachts.

221. On September 30, 2022, Norm Detrick emailed Riepe asking if there had been any feedback from Cruisers Yachts about (1) the bow high attitude, (2) the water going over the rear swim platform, and (3) the rooster tail of water trailing the boat when underway.

222. On November 10, 2022, Norm Detrick emailed SkipperBud's and again asked if there had been any feedback from Cruisers Yachts about how the vessel was riding in the water.

223. On December 6, 2022, Norm Detrick emailed SkipperBud's and again asked for an update regarding the status of Cruiser Yachts' review of the video documenting water going over the rear swim platform.

224. On December 7, 2022, after waiting more than 4 months for any response from Cruisers Yachts regarding the angle of the boat in the water, Norm Detrick contacted Cruisers

Yachts' Director of Customer Service Ferfecki, stating, "I wanted to reach out to you to follow up on a serious concern that I have with my yacht. This concern was reported in late July. While underway water goes up and over the swim platform creating additional drag and poor performance. Secondly, the yacht cruises with a bow high attitude. Both Jonathon [Meyer] and Todd [Riepe] have reached out to you multiple times and I have gotten no response. We have sent videos and I have paid for evaluation which I do not feel is fair."

225.    On February 7, 2023, Norm Detrick emailed SkipperBud's Regional VP Riepe, stating, "I have been struggling with getting cruisers to get back with [me] with a plan to fix the water going up and over the swim platform while the boat is underway."

226.    On February 13, 2023, Norm Detrick emailed Riepe asking if Cruisers Yachts had provided any feedback regarding the problem of the vessel's angle in the water, Riepe responded that Cruisers Yachts was "waiting for an update from their naval architects."

227.    On February 27, 2023, Riepe informed Norm Detrick by email that Cruisers Yachts was developing a plan to install a device to remedy the 54 Fly's angle in the water.

228.    On March 2, 2023, Riepe provided Norm Detrick with additional information regarding Cruisers Yachts' plan to install a device called an "interceptor plate" on the vessel.

229.    The interceptor plate was installed in April 2023.

230.    On May 4, 2023, technicians and engineers from Cruisers Yachts inspected and performed a sea trial of the 54 Fly.

231.    On May 5, 2023, Norm Detrick emailed SkipperBud's Regional VP Riepe and stated, "I met the engineers from Cruiser and volvo and I am not feeling like we are on a path of resolution and they are not transparent of any information."

37

232.     After the installation of the interceptor plate, the angle of the boat in the water continued to be a problem, and Cruisers Yachts' VP Zenz visited the 54 Fly in person on May 25, 2023 to develop a solution.

233.     On June 1, 2023, Norm Detrick emailed Zenz to schedule a time to discuss possible solutions to the swim platform problems.

234.     On July 19, 2023, another sea trial was performed, with the yacht being unloaded, tested with and without the tender and the rear thruster batteries aboard, and video taken for documentation.

235.     During the sea trial with the 54 Fly unloaded, all movable objects of significant weight were removed from the boat, but the results were the same—the center of gravity was awry, the swim platform dragged in the water, the top speed was only 29 miles per hour, and the engines overheated.

236.     The sea trial was performed both with Norm Detrick operating the 54 Fly and then SkipperBud's GM Meyer.

237.     When the engines overheated during the sea trial, they automatically derated, immediately reducing power and abruptly slowing down the vessel, creating an enormous stern wave, meaning that a significant amount of water washed over the swim platform with force.

238.     Cruisers Yachts' lead technician (Rick, last name unknown) initially blamed the stern wave on operator error by Norm Detrick, but it was a result of the automatic derating and the stern wave reoccurred when SkipperBud's GM Meyer was operating the vessel.

239.     The Detricks notified Cruisers Yachts and SkipperBud's that if this problem were to reoccur in different conditions (including in the ocean during the Great Loop trip), it could damage or sever the swim platform from the boat, placing them in danger of serious bodily harm.

38

240. Norm Detrick discussed the risks of the swim platform breaking off with Cruisers Yachts' VP Zenz, who agreed to send him additional information and drawings demonstrating the safety of the platform, and discuss further, but never did so.

241. Immediately following the sea trial on July 19, 2023, the Cruisers Yachts' and SkipperBud's representatives sent text messages and made calls to report back to their companies, and refused to provide any feedback to the Detricks, stating that Cruisers Yachts' VP Zenz would do so, but he never did.

242. On July 25, 2023, Norm Detrick emailed Cruisers Yachts and SkipperBud's following up on the sea trial, providing copies of the videos he had taken, and requesting that Cruisers Yachts provide copies of the videos they had taken.

243. On July 31, 2023, Norm Detrick sent a formal letter to Cruisers Yachts, SkipperBud's, and key representatives of those companies, setting forth the 54 Fly's numerous significant impairments, including the angle of the boat in the water, and asking them to resolve the issues as quickly as possible. Attached hereto as Exhibit 35 is a true and accurate copy of the referenced communication.

244. On August 8, 2023, Cruisers Yachts provided a formal response to the Detricks' letter, authored by Cruisers Yachts' VP of Operations and Engineering Delforge, and attempted to shift the blame for the problems with the boat to the Detricks and did not provide a reasonable or satisfactory resolution or explanation for the problems. Attached hereto as Exhibit 36 is a true and accurate copy of the referenced communication.

245. The Delforge letter hypothesized that the problems with the 54 Fly were a result of the Detricks overloading the boat and the additional weight adversely affecting the center of gravity and performance.

39

246. At no time during the sales or build process, or at any time prior to the Delforge letter, did Cruisers Yachts or SkipperBud's communicate or notify the Detricks that there was a problem with the weight of the boat, overloading of the boat by the Detricks, or that the weight of the boat was adversely affecting the center of gravity and performance.

247. The 54 Fly does not have any labeling or information indicating the total weight the vessel is designed to hold or what individual compartments on the vessel are designed to hold.

248. Based on multiple measurements taken of the 54 Fly, including those referenced in Complaint paragraphs 59 and 195, Cruisers Yachts and SkipperBud's knew or should have known if there was a problem with the weight of the 54 Fly, including any effect on performance, safety, and functionality of the vessel.

249. Neither Cruisers Yachts nor SkipperBud's notified the Detricks of a potential problem with the weight of the 54 Fly until at least July 2023.

250. At no time during the sales or build process, or at any time prior to the Delforge letter, did Cruisers Yachts or SkipperBud's communicate with, review, or discuss with the Detricks the weight calculations of the boat based on the options or equipment selected.

251. In fact, representatives of SkipperBud's—including Regional VP Riepe and GM Meyer—personally assisted the Detricks in loading the 54 Fly following completion of the build.

252. Cruisers Yachts and SkipperBud's, including Cruisers Yachts' VP Zenz, Riepe, SkipperBud's Sales Manager McDonald, Meyer, Cruisers Yachts' President Pedersen, and Porreca of Cruisers Yachts knew or should have known since delivery of the 54 Fly that it had substantial problems related to the angle of the boat in the water and the center of gravity being awry.

253. The 54 Fly's angle in the water and center of gravity being awry are a material defect and substantial impairment.

254.   To date, Cruisers Yachts and SkipperBud's have not remedied the problems with the 54 Fly's angle of the boat in the water and/or the center of gravity being awry, and failed to repair it within a reasonable amount of time and reasonable number of attempts.

### *Unlevel Beds - Material Defect and Substantial Impairment*

255.   In connection with the angle of the 54 Fly and center of gravity being awry, the beds in the vessel are visibly and substantially out of level, both at rest and when underway.

256.   In particular, the bed in the aft stateroom was substantially out of level, with the head of the bed approximately 5 or more inches lower than the foot of the bed.

257.   The 54 Fly's unlevel sleeping surfaces create health risks for passengers sleeping on an inverted surface, with their head positioned lower than their feet.

258.   In or around July 2023, Norm Detrick notified Cruisers Yachts and SkipperBud's of the unlevel sleeping surfaces and corresponding health risks (based on information provided by his personal doctor).

259.   Cruisers Yachts made efforts to level the bed in the aft stateroom by raising the head of the bed, however, no other unlevel bed surfaces were remedied.

260.   Cruisers Yachts and SkipperBud's, including Cruisers Yachts' VP Zenz, SkipperBud's Regional VP Riepe, and SkipperBud's Sales Manager McDonald specifically, knew or should have known that the beds in the 54 Fly were not level, at least from the time of delivery in July 2022.

261.   Cruisers Yachts and SkipperBud's, including Cruisers Yachts' President Pedersen, Cruisers Yachts' VP Zenz, Porreca of Cruisers yachts, and Riepe knew or should have known that the unlevel beds created health risks for passengers sleeping on them.

41

262.    The 54 Fly's unlevel beds are a material defect and substantial impairment, and Cruisers Yachts and SkipperBud's have failed to remedy within a reasonable amount of time and reasonable number of attempts.

263.    Upon information and belief, the problem of unlevel beds is a design and engineering problem that affects other Cruisers Yachts' vessels in the Cantius line.

### Garmin System - Material Defect and Substantial Impairment

264.    The 54 Fly's Garmin system is manufactured by Garmin and was installed and updated/maintained by Cruisers Yachts.

265.    Cruisers Yachts negligently and defectively installed the Garmin systems, including but not limited to loose power supply wires, installation and settings that resulted in unstable network connections, installation in wrong location/orientation and in close proximity to other electrical components that interfered with proper functioning, and wiring that was not according to manufacturer specifications.

266.    The Detricks first notified Cruisers Yachts and SkipperBud's regarding defects and malfunctions they were experiencing with the Garmin autopilot and GPS systems on or about August 2, 2022.

267.    The Detricks notified Cruisers Yachts and SkipperBud's regarding the numerous malfunctions they were experiencing with the 54 Fly's Garmin system on multiple additional occasions, including in or around June 2023.

268.    Cruisers Yachts contacted Garmin and scheduled a representative to visit the 54 Fly and investigate the problems and perform repairs and updates to the system in July 2023.

269.    The Garmin technician discovered that the system was not installed correctly by Cruisers Yachts, and he installed an additional device to remedy Cruisers Yachts' defective installation and prevent the network from crashing or malfunctioning.

42

270. However, the Garmin system continued to have error codes, lost radar service, and lost network connection after being serviced by the Garmin technician.

271. Norm Detrick provided Cruisers Yachts and SkipperBud's further notice of the Garmin system malfunctions by way of multiple emails during July, August, and September 2023.

272. In September 2023, the Detricks embarked on the Great Loop trip from Ohio to South Carolina which required a fully functioning Garmin system in order to safely maneuver the 54 Fly in Lake Erie, the Erie Canal, and the Atlantic Ocean.

273. Prior to and during the Great Loop trip the Garmin system repeatedly malfunctioned.

274. On September 19, 2023, Norm Detrick emailed Cruisers Yachts and SkipperBud's and notified them of additional problems with the Garmin screens completely blacking out and rendering the system unusable at night when it became dark.

275. The screen blackout problem reoccurred on September 21, 2023.

276. On September 22, 2023, Garmin representative (first name unknown) Lee spoke with the Detricks regarding the problems with the Garmin system, and informed them that the screen blackout was a result of a system update which changed a default setting to dim the screens in low light, but a bug in the update resulted in complete blackout rather than dimming.

277. In addition, the Garmin system update implemented by Cruisers Yachts caused certain personalized settings in the Detricks' system to be altered, including most significantly turning off the shallow water warning.

278. Garmin representative Lee assisted Norm Detrick with turning off the default setting that resulted in the screen blackout, however, when he asked Lee how to prevent these

problems from reoccurring so that no one is injured, Lee stated that there was no problem with the Garmin software and no way to prevent the problem from reoccurring after updates.

279. On September 22, 2023, Norm Detrick emailed Cruisers Yachts' Director of Customer Service Ferfecki following this call with Garmin and provided a summary of the interaction.

280. Based on the numerous and repeated Garmin system malfunctions and crashes, and the numerous and repeated communications by the Detricks related to these defects, Cruisers Yachts, SkipperBud's, and Ferfecki knew or should have known that the Detricks were placed in significant danger caused by the repeated defects, malfunctions, and crashes of the Garmin system.

281. In or around July 2023, the Detricks became aware of an additional defect and vulnerability in the Garmin system in the way it interacts with the ignition system installed by Cruisers Yachts.

282. Cruisers Yachts' VP Zenz informed the Detricks that the Garmin screens would blackout completely if they did not first shut off the 54 Fly's engines and then badge out of the ignition system as soon as possible.

283. This is a significant design flaw because the ignition system does not automatically shut off, and requires the operator to badge out in the salon, which is a separate location from the flybridge, where the operator typically is located when docking.

284. If this problem occurs, it would necessitate professional technical assistance to restore the screens' functionality, and create a safety risk due to the lack of access to all of the vessel's instruments and displays on the Garmin screens.

44

285. Cruisers Yachts' Director of Customer Service Ferfecki regularly communicated with representatives, management, and legal counsel from Garmin regarding the problems the Detricks were experiencing with the Garmin system.

286. Cruisers Yachts, SkipperBud's, and Ferfecki knew or should have known that the Detricks were placed in significant danger by the repeated defects, malfunctions, and failures of the Garmin system.

287. Cruisers Yachts, SkipperBud's, and Ferfecki failed to communicate with or warn the Detricks regarding the significant danger caused by the repeated malfunctions and system failures of the Garmin system.

288. On two occasions, the malfunctioning Garmin system caused the Detricks to run aground while operating the vessel, causing significant harm to the vessel and repair costs.

289. The malfunctioning Garmin system is a material defect and substantial impairment of the 54 Fly, and Cruisers Yachts and SkipperBud's failed to remedy the defective and malfunctioning Garmin system within a reasonable amount of time or reasonable number of attempts.

### *54 Fly Engines - Material Defect and Substantial Impairment*

290. The 54 Fly's engines were manufactured by Volvo Penta and installed by Cruisers Yachts.

291. The 54 Fly's engines overheated on at least 12 occasions, causing irreparable damage to their performance, dependability, and longevity.

292. The 54 Fly's engines overheating was caused by defects in the 54 Fly, including Cruisers Yachts' hull design and the center of gravity and/or angle of the vessel being awry.

293. The 54 Fly's engines experienced turbo charger leaks.

294. The 54 Fly's engines experienced exhaust leaks.

295.    The 54 Fly's engines experienced oil leaks.

296.    The 54 Fly's engines were improperly installed by Cruisers Yachts, because the fasteners and brackets (engine mounts) used to secure the engines were the wrong size.

297.    The transmission oil quality indicator, service engine reminders, and various warning and error indicators related to the engines and transmission repeatedly come on without reason or explanation.

298.    The 54 Fly's warning and error indicators are not recorded or preserved in the Garmin system as designed, and thus are not available for review.

299.    The Detricks notified Cruisers Yachts and SkipperBud's of the problems with the 54 Fly's engines and related systems on multiple occasions.

300.    The problems with the 54 Fly's engines are a material defect and substantial impairment, and Cruisers Yachts and SkipperBud's failed to remedy within a reasonable amount of time and reasonable number of attempts.

### Kohler Generator - Material Defect and Substantial Impairment

301.    The 54 Fly's generator was manufactured and warranted by Kohler Co. A true and accurate copy of the Kohler warranty is attached as Exhibit 37.

302.    The Kohler generator overheated on at least 40 occasions since delivery of the 54 Fly, causing irreparable damage to its performance, dependability, and longevity.

303.    The Kohler generator's impellors had to be replaced at least 10 times since delivery of the 54 Fly.

304.    The intake and plumbing system connected to the Kohler generator is defectively designed and results in repeated overheating of the generator.

305.    Cruisers Yachts improperly installed the Kohler generator, including upside down placement of the exhaust tube.

46

306. Upon information and belief, the problems experienced related to the Kohler generator's malfunctions are caused by a design and engineering problem that affects other Cruisers Yachts' vessels in the Cantius line.

307. A reliable generator system, designed to be used while underway, is essential to the Detricks in order to consistently operate air conditioners and refrigerators that are essential to managing Judy Detrick's health condition (multiple sclerosis).

308. Cruisers Yachts and SkipperBud's knew or should have known that the defective and malfunctioning generator system creates a significant health risk to the Detricks, including but not limited to Judy Detrick's health condition.

309. The Detricks notified Cruisers Yachts, and SkipperBud's regarding the defective and malfunctioning generator on multiple occasions, but they delayed, denied, and failed to remedy the problem, despite their knowledge of the urgency and importance of the issue to Judy Detrick's health.

310. In or around September 2023, Cruisers Yachts and SkipperBud's abandoned any further attempts to repair or resolve the generator problems.

311. The Detricks paid to have the generator repaired, including the exhaust tube that had corroded due to being installed upside down by Cruisers Yachts.

312. The problems with the generator are a material defect and substantial impairment, and Cruisers Yachts and SkipperBud's failed to remedy within a reasonable amount of time and reasonable number of attempts without charge, and it remained unresolved at the time Plaintiffs filed this action.

### *Windshield Wipers - Material Defect and Substantial Impairment*

313. The 54 Fly's windshield wipers have repeatedly malfunctioned for more than a year and at least 13 attempts to repair.

314.    The Detricks have notified Cruisers Yachts and SkipperBud's of the defective and malfunctioning windshield wipers many times since delivery of the 54 Fly to present. Attached hereto as Exhibit 38 is a true and accurate copy of certain communications regarding the windshield wipers.

315.    The 54 Fly's malfunctioning wipers create a basic safety concern, make it difficult to operate the boat safely and effectively, and Cruisers Yachts has never provided a satisfactory explanation of the problem, nor have they resolved the problem.

316.    On numerous occasions, the Detricks requested that Cruisers Yachts and/or SkipperBud's conduct a root cause analysis to identify the source of the wiper problems, but Cruisers Yachts and SkipperBud's repeatedly refused to do so.

317.    Rather than repair or remedy the malfunctioning wipers, Cruisers Yachts and SkipperBud's loaned the Detricks a windshield wiper and motor to keep as a back up on the 54 Fly.

318.    Cruisers Yachts' and SkipperBud's negligent actions and inaction with respect to the malfunctioning wipers has created a significant safety issue related to visibility and operation of the boat.

319.    In or around October 2023, Cruisers Yachts and SkipperBud's, including SkipperBud's Regional VP Riepe, and Cruisers Yachts' Director of Customer Service Ferfecki abandoned any further attempts to repair or resolve the wiper problems.

320.    The malfunctioning windshield wipers are a material defect and substantial impairment, and Cruisers Yachts and SkipperBud's have failed to remedy within a reasonable amount of time and reasonable number of attempts, and the problem remained unresolved at the time of this action being filed.

48

321. Upon information and belief, the problem of malfunctioning windshield wipers is a design and engineering problem that affects other Cruisers Yachts' vessels in the Cantius line.

*Hull Design and Engineering - Material Defect and Substantial Impairment*

322. During the sea trial process in 2023, Cruisers Yachts and SkipperBud's determined that certain problems with the boat were a result of the shape of the hull.

323. According to Cruisers Yachts' technicians and engineers, the shape of the hull was creating an excessive amount of air bubbles while underway, the bubbles were pulled into the 54 Fly's engines' cooling systems, causing the impellors to cavitate, and impairing the cooling system's effectiveness to the point where the engines overheated.

324. The repeated overheating caused irreparable damage to the performance, dependability, and longevity of the 54 Fly's engines.

325. Cruisers Yachts and SkipperBud's therefore undertook a project to make modifications to the shape of the hull of the 54 Fly, in order to resolve the problems with the vessel's performance and repeatedly overheating the engines.

326. The hull modification project was a process of repeated trial and error—modifying the shape of the hull, testing, failing, and reshaping again at least 10 times.

327. In addition, Cruisers Yachts undertook the project on a part-time basis, scheduling work intermittently and inconsistently, prioritizing Cruisers Yachts' cost reduction and the convenience and availability of its technicians, which materially delayed the repair process.

328. The problems with the shape of the hull are a material defect and substantial impairment and were a fundamental design and engineering defect with the 54 Fly.

329. The design and engineering defects with the hull of the 54 Fly clearly demonstrated that the promises and representations of Cruisers Yachts and SkipperBud's, including SkipperBud's Regional VP Riepe and Cruisers Yachts' VP Zenz touting a well-engineered and

49

refined product that has been on the market for years and stood the test of time, were false and misleading.

330. The 54 Fly's defective hull was not repaired within a reasonable number of attempts or reasonable amount of time, or at no cost to the Detricks.

331. Eventually, after numerous attempts, through trial and error, the hull was sufficiently repaired to remedy the repeated overheating of the Volvo Penta engines, but not before irreparable and significant harm was done to the engines.

332. The hull modification project significantly delayed the Detricks' Great Loop trip, as the project began in July 2023 and was not completed until September 2023.

333. In addition, after the Detricks commenced the Great Loop trip in September 2023, they discovered that Cruisers Yachts repainted the hull in a negligent and unworkmanlike manner and the paint job had failed.

334. Cruisers Yachts repainted only the affected area, which resulted in mismatched paint and caused the Detricks to incur additional costs related to repainting the entirety of the hull below the water line.

### *Instruments, Sensors, and Gauges - Material Defect and Substantial Impairment*

335. The 54 Fly's engine service and warning lights repeatedly came on without reason, and were not repaired within a reasonable number of attempts or reasonable amount of time.

336. The 54 Fly's transmission oil quality sensor repeatedly came on without reason, and was not repaired within a reasonable number of attempts or reasonable amount of time.

337. The 54 Fly's freshwater gauge did not function properly, and was not repaired within a reasonable number of attempts or reasonable amount of time.

338. The 54 Fly's blackwater gauge did not function properly, and was not repaired within a reasonable number of attempts or reasonable amount of time.

339.   Defective and malfunctioning instruments, sensors, and gauges make trip planning unreasonably difficult, deprive the operator of essential information, and create a significant safety risks, including awareness of possible problems with the boat, among other issues.

340.   In addition, the defective and malfunctioning instruments, sensors, and gauges create ongoing stress and uncertainty that deprive the Detricks of the full enjoyment of the 54 Fly.

341.   In or around October 2023, Cruisers Yachts and SkipperBud's abandoned any further attempts to repair the defective and malfunctioning instruments, sensors, and gauges.

342.   The defective and malfunctioning instruments and gauges are a material defect and substantial impairment, and Cruisers Yachts and SkipperBud's failed to remedy within a reasonable amount of time and reasonable number of attempts.

### *Fuel Gauge – Material Defect and Substantial Impairment*

343.   The 54 Fly's fuel gauge does not function properly, and has not been repaired without charge within a reasonable number of attempts or reasonable amount of time.

344.   The Detricks paid a third-party to recalibrate and repair the 54 Fly's fuel gauge in Hilton Head, South Carolina, in or around late Spring 2024.

345.   The defective fuel gauge makes trip planning unreasonably difficult and creates safety risks related to accurate awareness of fuel levels.

346.   The defective and malfunctioning fuel gauge is a material defect and substantial impairment, and Cruisers Yachts and SkipperBud's failed to remedy within a reasonable amount of time and reasonable number of attempts.

### *Fuel Burn Computer – Material Defect and Substantial Impairment*

347.   The 54 Fly has a fuel burn computer that should provide accurate and reliable information regarding the following: instant fuel rate, average fuel rate, time to empty, instant fuel

51

economy, average fuel economy, trip fuel economy, distance to empty, fuel level, fuel remaining, and trip time.

348. The 54 Fly's fuel burn computer has been defective and malfunctioned since the time of delivery in July 2022, and does not provide accurate information regarding fuel.

349. The defective and malfunctioning fuel burn computer makes trip planning unreasonably difficult and creates a significant safety risk related to awareness of fuel levels and unexpectedly running out of fuel, particularly when traveling long distances.

350. The defective and malfunctioning fuel burn computer is a material defect and substantial impairment of the 54 Fly, and Cruisers Yachts and SkipperBud's failed to remedy within a reasonable amount of time and reasonable number of attempts.

### *Steering Wheel – Material Defect and Substantial Impairment*

351. During the second Great Loop attempt, the 54 Fly's steering wheel locked up while underway in the Erie Canal in September 2023, creating a significant safety risk, as a result of Cruisers Yachts' negligence and failure to install properly.

352. Cruisers Yachts identified a Volvo Penta dealership in New York to repair the steering wheel, and the Volvo Penta technician negligently and improperly performed the repair.

353. In particular, the Volvo Penta technician reused nylon lock nuts, which are a single use piece of hardware, and reuse creates the risk of a repeated failure.

354. A competent technician should know if a nylon lock nut has already been used, and should know that a nylon lock nut will not function properly if reused.

355. Reuse of a nylon locknut is improper and negligent, particularly in a safety-sensitive application, such as the 54 Fly's steering wheel system.

52

356.   Cruisers Yachts' Director of Customer Service Ferfecki claimed in communications with Norm Detrick, that it was Cruisers Yachts' standard operating procedure to reuse nylon locknuts, a piece of hardware that commonly sells for approximately $0.59.

357.   Cruisers Yachts subsequently provided its own technicians, Paul Sawicki and Rick (last name unknown), to fix the negligently repaired steering wheel when the 54 Fly was in Atlantic City, New Jersey, and their technicians also negligently and improperly performed the repair.

358.   In particular, the Cruisers Yachts' technicians failed to follow the clear written instructions from the manufacturer, which directed that installation be completed using a torque wrench and tightening to a specific metric.

359.   Contrary to the manufacturer's instructions, the Cruisers Yachts' technicians simply tightened the nuts with hand tools, creating the risk of a repeated failure.

360.   Due to the negligent failures to properly repair the steering wheel, the Detricks independently hired a technician who properly repaired the failed steering wheel per the manufacturer's specifications.

361.   Cruisers Yachts knew or should have known the proper method to install the steering wheel and lock nuts.

362.   Cruisers Yachts knew or should have known that improper installation of the steering wheel and lock nuts created a significant safety risk for the Detricks in operating the 54 Fly.

363.   The 54 Fly's improperly installed steering wheel clearly demonstrated that the promises and representations of Cruisers Yachts and SkipperBud's touting the highest standards of quality control in the industry were false and misleading.

364. Cruisers Yachts has failed to provide a reasonable or satisfactory explanation for the initial failure of the steering wheel and the subsequent negligently performed repair attempts.

365. The defectively installed steering wheel was a material defect and substantial impairment, and Cruisers Yachts and SkipperBud's failed to remedy within a reasonable amount time and reasonable number of attempts without charge.

### *Poor Workmanship and Defective Door Finishes*

366. At the time the 54 Fly was delivered in July 2022, the painted interior doors in the vessel were defective due to poor workmanship as to the high gloss finishes.

367. In particular, both the hinge- and strike-side edges of all interior doors were very rough, improperly finished, and did not meet reasonable standards of workmanship with respect to the high gloss finish, which is a costly option (Cruisers Yachts' build sheet indicates a cost of approximately $50,000).

368. The interior door finishes in the 54 Fly are a material defect and clearly demonstrated that the promises and representations of Cruisers Yachts and SkipperBud's touting the highest standards of quality, luxury, and beauty, were false and misleading.

369. Cruisers Yachts and SkipperBud's failed to identify this obvious defect during their quality control measures, including Cruisers Yachts' VP Zenz's quality control check and personal delivery, and SkipperBud's multiple, final quality control checks upon delivery.

370. The Detricks notified Cruisers Yachts and SkipperBud's of the defective interior door finishes shortly after taking delivery of the vessel in 2022, and numerous times thereafter.

371. Cruisers Yachts and SkipperBud's did not remedy the defective interior door finishes within a reasonable amount of time or reasonable number of attempts, as it took nearly a year from the initial notice to resolve the problem with the door finishes.

***Water Filtration System – Material Defect and Substantial Impairment***

372.     The 54 Fly's water filtration system is defective and has repeatedly malfunctioned since the time of delivery of the vessel.

373.     The water filtration system is intended to filter water via reverse osmosis from a dock water supply.

374.     The 54 Fly's water filtration system is not the appropriate system for the 54 Fly because it is designed to sit on the dock and not be installed in the vessel, rather than being intalled in the vessel and integrated into the vessel's plumbing system.

375.     Cruisers Yachts' original factory installation of the water filtration system was defective and resulted in unsightly and ineffective operation, requiring a manual garden-style hose hook up, lifting of back seats to allow for hose drainage, and expelling of reject water through the hose over the side of the vessel.

376.     The 54 Fly's water filtration system did not work upon delivery of the vessel, and the Detricks notified Cruisers Yachts and SkipperBud's of the defects and malfunctions.

377.     Months after delivery, SkipperBud's reinstalled the water filtration system and replaced major components, including cracked filters, and the costs of reinstallation were paid for by the Detricks.

378.     After reinstallation, the water filtration system continued to be defective and malfunctioned, including water leaking out of gaskets and filling the bilge with water and setting off alerts in the vessel, as described in paragraph 108 of the Complaint.

379.     In addition, the reinstalled system expels the reject water through a hose on and around the stairs of the vessel, rather than through a drainage system integrated into the vessel's plumbing, creating an unexpectedly slippery and hazardous walking surface on the stairs to enter and exit the vessel.

380.    Cruisers Yachts and SkipperBud's have failed to repair the water filtration system within a reasonable amount of time or reasonable number of attempts at no cost to the Detricks.

381.    The defective and malfunctioning water filtration system is a material defect and substantially impairs the 54 Fly and has never been remedied.

### Swim Platform - Material Defect and Substantial Impairment

382.    The 54 Fly's swim platform is defective and has repeatedly malfunctioned since delivery of the vessel, because it is too low and drags in the water, gets swamped while underway, creates a "rooster tail" in the water while underway, and fills the tender with water.

383.    The amount of water going over the swim platform while underway is substantial - for example, in a quartering sea, when water is hitting the side of the boat at an angle, a column of water approximately three feet high, two feet wide, and seven feet long (the length of the platform) continuously washes over the swim platform.

384.    The water swamping the swim platform and filling the tender place significant additional strain on the platform, creating a safety hazard and risk of damaging or severing the platform from the vessel.

385.    The Detricks notified Cruisers Yachts and SkipperBud's of the swim platform's defects and malfunctions shortly after delivery of the vessel.

386.    Cruisers Yachts and SkipperBud's offered certain work arounds, such as putting a cover on the tender, that were insufficient and ineffective and did not remedy the defects and malfunctions of the swim platform.

387.    In or around July 2023, Cruisers Yachts and SkipperBud's attempted to build a new swim platform to remedy the defects and malfunctions, after the installation of an interceptor plate failed to do so, as described in paragraphs 227to 232 of the Complaint.

56

388.    The rebuilt swim platform did not remedy the defects and malfunctions, and the swim platform continues to sit too low in the water and is swamped with water while underway.

389.    Cruisers Yachts and SkipperBud's have failed to repair the swim platform within a reasonable amount of time or reasonable number of attempts at no cost to the Detricks.

390.    The defective and malfunctioning swim platform is a material defect and substantially impairs the 54 Fly and has never been remedied.

### *SeaDek – Material Defect and Substantial Impairment*

391.    In connection with the rebuilt swim platform, Cruisers Yachts agreed to install a new SeaDek floor covering on the platform, but failed to provide one that matched the existing floor coverings of the 54 Fly and failed to install the SeaDek covering as agreed.

392.    The absence of the SeaDek floor covering results in a slippery fiberglass walking surface, particularly when wet.

393.    The slippery fiberglass floor of the swim platform creates a significant safety hazard for both passengers and pets aboard the 54 Fly.

394.    The Detricks paid approximately $10,000 for the SeaDek floor covering.

395.    Cruisers Yachts and SkipperBud's have failed to install the SeaDek swim platform covering and abandoned any further efforts to do so in or around October 2023.

### *Ignition System - Material Defect and Substantial Impairment*

396.    The 54 Fly's ignition and key fob system is defectively designed, making it difficult to disengage the ignition after shutting down the engines, which creates significant safety and security issues related to accidental or unauthorized starting of the engines and operation of the vessel.

397.    In or around August 2022, the Detricks notified SkipperBud's of this defect.

57

398. Initially, Cruisers Yachts and SkipperBud's Penta communicated that they would fix the ignition and key fob system defect.

399. After failing to fix the defect, Paul Sawicki of Cruisers Yachts communicated that the defect would be remedied by a subsequent software update or patch, effective January 1, 2024.

400. The software update referenced by Sawicki was never released and thus did not remedy the defect in January 2024.

401. At the time of filing this action, Cruisers Yachts and SkipperBud's had failed to repair or remedy the defective ignition and key fob system and abandoned any further efforts to repair.

402. The defective ignition and key fob system is a material defect and substantial impairment of the 54 Fly, and Cruisers Yachts and SkipperBud's have failed to remedy within a reasonable amount of time or reasonable number of attempts.

403. Upon information and belief, the problem of the defective ignition and key fob system is a design and engineering problem that affects other Cruisers Yachts' vessels in the Cantius line.

### *Caulking and Sealing - Material Defect and Substantial Impairment*

404. The caulking and sealing on the 54 Fly failed throughout the vessel, resulting in leaks, moisture, and ongoing maintenance concerns, including extensive and ongoing electrical problems.

405. The caulking had numerous defects, including poor workmanship in applying the product, gaps or missed areas, cracking, and tacky and discolored surfaces, among other issues.

406. In addition, the caulking surrounding the diesel fuel fill area is the wrong material for the application, as it becomes discolored.

407.     In or around June 2023, the caulking failed to such a degree that approximately 30-50 gallons of water leaked from the top of the flybridge into the aft state room, bunk state room, and atrium areas below.

408.     Moisture and water also penetrated the area containing the main electrical wiring chase from the flybridge to the salon area, meaning that the computer cables and other electrical components had been exposed to moisture and water for approximately a year before being detected.

409.     The leaks and moisture problems resulting from defective caulking necessitated the engagement of a water damage restoration contractor, extensive mold testing, application of mildewcide, and continued testing to ensure that latent problems do not go undetected.

410.     The leaks and moisture problems resulting from defective caulking have caused extensive and ongoing electrical problems in the 54 Fly.

411.     Although Cruisers Yachts removed and reapplied caulking throughout the 54 Fly, the failure to properly caulk the vessel during the build process irreparably harmed the vessel and its value.

412.     The defective caulking and related leak and moisture problems still existed as of the date of the filing of this action, and Cruisers Yachts and SkipperBud's have failed to conduct follow-up water testing, mold testing, and repairs.

413.     The defective caulking in the 54 Fly clearly demonstrated that the promises and representations of Cruisers Yachts and SkipperBud's touting the highest standards of quality control in the industry were false and misleading.

59

414. The defective caulking is a material defect and substantial impairment of the 54 Fly, and Cruisers Yachts and SkipperBud's have failed to remedy within a reasonable amount of time and reasonable number of attempts.

### *Salon Door - Material Defect and Substantial Impairment*

415. Since the time the Detricks took delivery of the 54 Fly, the salon door has malfunctioned repeatedly for multiple reasons.

416. The Detricks notified Cruisers Yachts and SkipperBud's of the malfunctioning door shortly after delivery of the 54 Fly.

417. SkipperBud's unsuccessfully attempted to repair the door twice in Sturgeon Bay, Wisconsin shortly after delivery of the 54 Fly.

418. SkipperBud's again unsuccessfully attempted to repair the door multiple times between August of 2022 and June of 2023.

419. The Detricks mistakenly thought that the salon door had been repaired, but the lock again malfunctioned in or around March 2024 and prevented access through the door.

420. The Detricks again notified Cruisers Yachts and SkipperBud's of the defective and malfunctioning salon door in March 2024.

421. The Detricks paid for emergency repair of the salon door lock in March 2024.

422. The 54 Fly salon door does not sit squarely in the frame, causing uneven pressure, uneven gaps, leaking water, and impingement in opening and closing.

423. The malfunctioning salon door creates a safety hazard because it does not latch properly, does not open properly, and unexpectedly swings open and closed while underway.

424. The defective and malfunctioning salon door in the 54 Fly clearly demonstrated that the promises and representations of Cruisers Yachts and SkipperBud's touting the highest standards of quality control in the industry were false and misleading.

425.     Cruisers Yachts and SkipperBud's abandoned any further attempts to repair or resolve the salon door defects and malfunctions since being notified again by the Detricks in March 2024, and it is still not repaired.

426.     The defective and malfunctioning salon door is a material defect and substantial impairment of the 54 Fly, and Cruisers Yachts and SkipperBud's have failed to remedy within a reasonable amount of time or reasonable number of attempts.

*Unlevel Appliances – Material Defect and Substantial Impairment*

427.     The appliances in the 54 Fly, including refrigerator, cooking surfaces, and oven, are visibly and substantially out of level, both at rest and when underway.

428.     The unlevel appliances adversely affects the performance and longevity of those items.

429.     The unlevel appliances are a material defect and substantial impairment of the 54 Fly, and Cruisers Yachts and SkipperBud's have failed to remedy within a reasonable amount of time and reasonable number of attempts.

430.     Upon information and belief, the problem of unlevel appliances is a design and engineering problem that affects other Cruisers Yachts' vessels in the Cantius line.

*Unlevel Air Conditioning Equipment – Material Defect and Substantial Impairment*

431.     The air conditioning equipment in the engine room of the 54 Fly is visibly and substantially out of level, both at rest and when underway.

432.     The unlevel air conditioning equipment adversely affects the performance and longevity of the equipment.

433.     The unlevel air conditioning equipment is a material defect and substantial impairment of the 54 Fly, and Cruisers Yachts and SkipperBud's have failed to remedy within a reasonable amount of time and reasonable number of attempts.

61

434.    Upon information and belief, the problem of unlevel air conditioning equipment is a design and engineering problem that affects other Cruisers Yachts' vessels in the Cantius line.

*Unlevel Surfaces – Material Defect and Substantial Impairment*

435.    The interior surfaces of the 54 Fly, including countertops, drawers, cabinets, and more, are visibly and substantially out of level, both at rest and when underway.

436.    The unlevel surfaces are a material defect and substantial impairment of the 54 Fly, and Cruisers Yachts and SkipperBud's have failed to remedy within a reasonable amount of time and reasonable number of attempts.

437.    Upon information and belief, the problem of unlevel surfaces is a design and engineering problem that affects other Cruisers Yachts' vessels in the Cantius line.

*Refrigerator – Material Defect and Substantial Impairment*

438.    The 54 Fly's refrigerator has failed and been replaced three times, which is an unreasonable number of times to repair or replace.

439.    The refrigerator is an essential component of the 54 Fly for the Detricks, due to temperature-sensitive medication that Judy Detrick needs for her health conditions—a nonfunctioning refrigerator presents a serious threat to her health and well-being.

*Electrical Wiring – Material Defect and Substantial Impairment*

440.    The electrical wiring ends in the 54 Fly were not consistently treated with heat-shrinking, as promised by Cruisers Yachts and SkipperBud's.

441.    The electrical wiring in the 54 Fly was not labeled as promised by Cruisers Yachts and SkipperBud's.

442.    The 54 Fly was not prepared for saltwater conditions as promised by Cruisers Yachts and SkipperBud's.

443. The electrical wiring has been exposed to leaks and moisture and resulted in repeated electrical malfunctions that continue to emerge over time.

444. The defective and malfunctioning electrical wiring is a material defect and substantial impairment, and Cruisers Yachts and SkipperBud's have failed to remedy within a reasonable amount of time and reasonable number of attempts.

### *Fuse Box, Network Cables, and Electronic Devices - Material Defects and Substantial Impairment*

445. The electrical fuse box, network cables, and other electronic devices have been exposed to leaks and moisture for a period of more than one year and irreparably damaged.

446. The leaks and moisture affecting the 54 Fly's fuse box, network cables, and electronic devices have resulted in repeated electrical problems that have and will continue to emerge over time.

447. The malfunctioning fuse box, network cables, and electronic devices are a material defect and substantial impairment, and Cruisers Yachts and SkipperBud's have failed to remedy or repair the defective fuse box, network cables, and electronic devices within a reasonable amount of time and reasonable number of attempts.

### *Ceramic Windshield Coating – Material Defect and Substantial Impairment*

448. Cruisers Yachts applied a ceramic coating to the windshield of the 54 Fly prior to delivery of the vessel in July 2022.

449. Cruisers Yachts defectively and negligently applied the ceramic coating in a manner that adversely affected the functioning of the windshield wipers.

450. Cruisers Yachts attempted to remove the ceramic coating, but failed to properly do so and failed to remedy the malfunctioning windshield wipers by removing the ceramic coating.

451.    The defective ceramic coating is a material defect and substantial impairment of the 54 Fly, and Cruisers Yachts and SkipperBud's failed to remedy within a reasonable amount of time and reasonable number of attempts.

452.    Cruisers Yachts and SkipperBud's abandoned any additional efforts at remedying or repairing the defective ceramic coating in or around November 2023.

### *Propspeed Coating – Material Defect and Substantial Impairment*

453.    Several components of the 54 Fly were to be covered with a protective coating called Propspeed, including the propellors, engine raw water pickups, generator raw water pickup, generator sea strainer, air conditioner raw water pick up, SeaKeeper raw water pickup, pods, and related surfaces under the vessel.

454.    Propspeed prevents unwanted marine growth and damage from saltwater conditions to essential metal components below the waterline of the vessel, and ensures proper cooling and operation.

455.    Cruisers Yachts, including Dan Zenz specifically, had promised the 54 Fly would be saltwater-ready, and the Propspeed coating is necessary for saltwater-readiness.

456.    Cruisers Yachts and SkipperBud's failed to apply the Propspeed coating prior to delivery of the vessel in July 2022, and therefore the Detricks had to pay an additional amount for them to do so.

457.    The Prospeed coating, which was applied by Cruisers Yachts and SkipperBud's, then failed and had to be reapplied on two occasions.

### *FLIR Camera – Material Defect and Substantial Impairment*

458.    The 54 Fly's FLIR camera did not function properly, and was not repaired by Cruisers Yachts and SkipperBud's within a reasonable amount of time or reasonable number of attempts.

*Siren Marine System – Material Defect and Substantial Impairment*

459. In or around September 2023, SkipperBud's installed a Siren Marine system to monitor, track, control, and secure the 54 Fly with a remote monitoring and security system.

460. The Detrick's paid approximately $5,000 to SkipperBud's and $5,000 to Siren Marine for installation of the system.

461. The Siren Marine system was defectively installed and does not function properly, including not properly arming, disarming, or providing alerts and information.

462. SkipperBud's has made no attempts to repair since being notified by the Detricks in September 2023, and failed to remedy the Siren Marine system within a reasonable amount of time and reasonable number of attempts.

463. As of the date of filing this action, the Siren Marine system continued to be defective and malfunction.

*Ice Maker - Material Defect and Substantial Impairment*

464. The 54 Fly's ice maker malfunctioned on numerous occasions, and it took an unreasonable amount of time and unreasonable number of attempts by Cruisers Yachts to repair over a 12-month period.

*Shower Door - Material Defects and Substantial Impairment*

465. The 54 Fly's shower door leaked on numerous occasions, and it took an unreasonable amount of time and unreasonable number of attempts by Cruisers Yachts to repair over a period of many months.

*Shower Drain - Material Defect and Substantial Impairment*

466. The 54 Fly's shower drain backed up on numerous occasions, and it took an unreasonable amount of time and unreasonable number of attempts by Cruisers Yachts to repair over a period of many months.

*Electronic Toilet Flush System – Material Defect and Substantial Impairment*

467.    The 54 Fly's electronic toilet flush system does not function properly, despite numerous unsuccessful attempts to repair, and Cruisers Yachts and SkipperBud's have failed to remedy within a reasonable amount of time and reasonable number of attempts.

*Door Seals – Material Defect and Substantial Impairment*

468.    The 54 Fly's interior door seals and gaskets were defective because they did not properly adhere to the door frame.

469.    The Detricks provided notice to Cruisers Yachts and SkipperBud's of the defective door seals, and it took approximately a year and multiple attempts for Cruisers Yachts and SkipperBud's to properly repair.

470.    Cruisers Yachts and SkipperBud's failed to remedy or repair the defective door seals within a reasonable amount of time and reasonable number of attempts.

*Window Seals – Material Defect and Substantial Impairment*

471.    At the time the Detricks took delivery in July 2022, the windows in the aft state room leaked while the vessel was underway.

472.    Although Cruisers Yachts repaired the leaking windows in the aft state room, this issue should have been identified and remedied by Cruisers Yachts and Cruisers Yachts' VP Zenz during their quality control checks prior to delivery, and demonstrated that the promises and representations of Cruisers Yachts and SkipperBud's touting the highest standards of quality control in the industry were false and misleading.

*Window Coverings – Material Defect and Substantial Impairment*

473.    Since approximately August 2022, the blinds covering the windows of the 54 Fly malfunction by not staying in place.

66

474. The malfunctioning blinds create a privacy concern at night, as they fall down and fail to cover the windows.

475. The malfunctioning blinds create a climate control problem during daylight hours, as they fall down and allow the sunlight to heat the interior spaces and create additional strain on the air conditioning system.

476. Cruisers Yachts and SkipperBud's have attempted to repair the malfunctioning window coverings on multiple occasions, but have failed to remedy the issue within a reasonable amount of time or reasonable number of attempts.

### *High Gloss Finishes – Material Defect and Substantial Impairment*

477. Since taking delivery of the 54 Fly in July 2022, the Detricks have experienced problems with the high gloss finishes on doors, cabinets, and other surfaces being damaged due to defective design and function.

478. The doors and cabinets operate in such a manner that, the high gloss surfaces collide with other surfaces in their swing path, causing repeated damage to the finishes throughout the 54 Fly.

479. Cruisers Yachts and SkipperBud's have attempted remedies which are unsightly and ineffective, and the defective design and ineffective remedies demonstrate that the promises and representations of Cruisers Yachts and SkipperBud's touting the highest standards of quality, luxury, and beauty in the industry were false and misleading.

480. Cruisers Yachts and SkipperBud's have failed to remedy the problems with the high gloss finishes within a reasonable amount of time and reasonable number of attempts.

### *Solid Surface Countertops – Material Defects and Substantial Impairment*

481. The 54 Fly's solid surface countertops throughout the vessel are defective because they are not stain-resistant and are easily stained, for example, by coffee or other liquids.

67

482. Cruisers Yachts and SkipperBud's have failed to repair or remedy the stained countertops within a reasonable amount of time and reasonable number of attempts at no cost.

### *Unsafe Stairs – Material Defect and Substantial Impairment*

483. The 54 Fly's stairs leading from the flybridge to the cockpit are hazardous and unsafe, because there is no handrail or grab bar, making it difficult to maintain balance with three points of contact, and particularly unsafe and slippery when wet.

484. The 54 Fly's stairs leading from the cockpit to the atrium are hazardous and unsafe, because only four of the five steps are illuminated, making it unsafe particularly in low-light conditions.

### *Cabinet Drawers – Material Defects and Substantial Impairment*

485. The 54 Fly's cabinet drawers have defective and malfunctioning latches, which are of poor quality and break easily, and they regularly fall or slide open when underway.

### *Air Conditioning – Material Defect and Substantial Impairment*

486. The 54 Fly's air conditioning system is ineffective at maintaining consistent temperatures in the salon, with a portion of the room being approximately 70 degrees and a portion of the room being as hot as 85 degrees.

487. The defective air conditioning system creates a health risk for Judy Detrick, due to her health condition, which requires consistent and reliable temperatures in the vessel.

### *Anti-Corrosion System – Material Defect and Substantial Impairment*

488. The 54 Fly's anti-corrosion system is defectively designed because the system must be manually turned off and on by a qualified mechanic when transitioning from salt water to fresh water, which is frequently required during the Great Loop trip.

***Traveling On Plane – Material Defect and Substantial Impairment***

489. Cruisers Yachts and SkipperBud's represented and promised that the 54 Fly was capable of traveling "on plane."

490. The 54 Fly is not capable of planing while underway, which adversely affects the performance of the vessel and impairs visibility looking over the bow.

***Seakeeper – Material Defect and Substantial Impairment***

491. The 54 Fly is equipped with a mechanical device called a Seakeeper, which was installed by Cruisers Yachts as a factory option.

492. The 54 Fly's build sheet indicated a cost of approximately $120,000 for the Seakeeper.

493. The Seakeeper is intended to eliminate or minimize the vessel's roll and pitch, which is much more pronounced on a vessel with a flybridge, like the 54 Fly.

494. The Seakeeper should make the 54 Fly more safe for passengers to move around while the vessel is underway.

495. The Seakeeper should make the 54 Fly safer and easier to dock or navigate in close quarters.

496. The Seakeeper should minimize seasickness for passengers on the 54 Fly.

497. The Seakeeper has repeatedly malfunctioned, ceased working, and showed error codes since shortly after delivery of the 54 Fly.

498. The Detricks first notified Cruisers Yachts and SkipperBud's of the defective and malfunctioning Seakeeper on August 21, 2022. Attached hereto as Exhibit 39 is a true and accurate copy of the referenced communication.

499. The Seakeeper overheated on May 9, 2023 and June 3, 2023.

500. On or about June 9, 2023, Cruisers Yachts performed repair work on the Seakeeper.

69

501.    The Seakeeper showed an error code related to the zinc anode on June 20, 2023, and the Detricks again notified SkipperBud's in late June 2023 that the Seakeeper was malfunctioning.

502.    The Seakeeper again overheated in August and September 2023, and the Detricks again notified Cruisers Yachts and SkipperBud's that the Seakeeper was malfunctioning on August 20, 2023 and September 30, 2023.

503.    Cruisers Yachts performed repairs and maintenance on the Seakeeper in October 2023, while the 54 Fly was in Atlantic City, New Jersey for other repairs.

504.    The Seakeeper again malfunctioned and did not work when the 54 Fly was enroute from Atlantic City, New Jersey to Hilton Head, South Carolina on November 4, 2023 and again on November 8, 2023.

505.    In April 2024, repairs were again attempted on the Seakeeper.

506.    In May 2024, the Seakeeper again overheated and malfunctioned and was unusable while underway in the Atlantic Ocean.

507.    The Seakeeper does not eliminate or minimize the vessel's roll and pitch, does not make the vessel safer for passengers, does not make docking or navigating in close quarters safer or easier, and does not minimize seasickness for passengers on the 54 Fly.

508.    The problems with the Seakeeper are a material defect and substantial impairment of the 54 Fly, and Cruisers Yachts and SkipperBud's have failed to remedy within a reasonable amount of time and reasonable number of attempts without charge.

### *Flybridge – Material Defect and Substantial Impairment*

509.    The 54 Fly's flybridge has a material defect and substantial impairment because it retains water and does not properly drain water out of the flybridge.

70

510.     The 54 Fly's defective flybridge floods the adjacent compartments and causes mold, mildew, and the unsightly build up of sediment and debris.

511.     The Detricks first notified Cruisers Yachts and SkipperBud's of the defective flybridge in or around July 2023, and they have not remedied within a reasonable amount of time or reasonable number of attempts.

### *Stainless Steel – Material Defect and Substantial Impairment*

512.     The 54 Fly's stainless steel handrail, fasteners, and other components have a material defect and substantial impairment because they are rusting.

513.     Cruisers Yachts and SkipperBud's have not remedied the defective stainless steel handrail, fasteners, and other components within a reasonable amount of time or reasonable number of attempts.

### *Service and Repair Scheduling and Coordination Failures*

514.     In or around August 2022, SkipperBud's Regional VP Riepe communicated to the Detricks that he would assign SkipperBud's most experienced and competent service writer, Tara Crump, to manage and oversee the work on the 54 Fly and preparing for the Great Loop trip.

515.     SkipperBud's and Crump's system for scheduling and tracking repairs and work orders was archaic and ineffective.

516.     SkipperBud's prioritized scheduling and completing the simplest, billable tasks and left more complicated or warranty-related items for last.

517.     Cruisers Yachts and SkipperBud's did not communicate consistently or effectively regarding scheduling of work, length of projects, expected timeline, or actual completion.

518.     Cruisers Yachts' and SkipperBud's repair workers and technicians negligently caused damage to the 54 Fly's furnishings and finishes on multiple occasions when performing other repairs.

71

519. The Detricks created a cloud-based document accessible to all relevant parties to track project status, but Cruisers Yachts and SkipperBud's failed to effectively utilize it.

520. On a regular and ongoing basis during 2022 and 2023, Norm Detrick provided updated warranty and repair lists to Cruisers Yachts and SkipperBud's via email and scheduled calls to discuss the items.

521. In or around December 2022, Cruisers Yachts assigned Director of Customer Service Ferfecki to manage and oversee the work on the 54 Fly, including a commitment to holding weekly status update meetings and providing regular written updates.

522. Cruisers Yachts' Director of Customer Service Ferfecki represented and promised that Cruisers Yachts and SkipperBud's would remedy as soon as possible the warranty issues, material defects, and substantial impairments of the 54 Fly referenced throughout this Complaint.

523. Cruisers Yachts' Director of Customer Service Ferfecki, in a phone call with Norm Detrick on July 24, 2023, represented and promised that Cruisers Yachts and SkipperBud's would pay or reimburse the costs and invoices incurred by the Detricks for repairs to the 54 Fly. On the weekly meeting calls between Ferfecki, Jonathan Meyer, and Norm Detrick, this topic was discussed numerous times during August, September, and October 2023.

524. Cruisers Yachts' Director of Customer Service Ferfecki, in a phone call with Norm Detrick on July 24, 2023, represented and promised that Cruisers Yachts and SkipperBud's would pay or reimburse the fuel costs incurred by the Detricks related to testing, repairs, and malfunctions of the 54 Fly. On the weekly meeting calls between Ferfecki, Jonathan Meyer, and Norm Detrick, this topic was discussed numerous times during August, September, and October 2023.

525. Cruisers Yachts' Director of Customer Service Ferfecki, in a phone call with Norm Detrick on July 24, 2023, represented and promised that Cruisers Yachts and SkipperBud's would

compensate the Detricks for wear and tear on the 54 Fly related to or caused by testing, repairs, and malfunctions. On the weekly meeting calls between Ferfecki, Jonathan Meyer, and Norm Detrick, this topic was discussed numerous times during August, September, and October 2023.

526.    Cruisers Yachts' Director of Customer Service Ferfecki represented and promised that the Promise Team would meet with the Detricks in order to address the warranty issues, material defects, and substantial impairments of the 54 Fly.

527.    On August 10, 2023, Cruisers Yachts' Director of Customer Service Ferfecki represented and promised that Cruisers Yachts and SkipperBud's would provide technical drawings and information related to the warranty issues, material defects, and substantial impairments of the 54 Fly.

528.    The representations and promises of Ferfecki (and Cruisers Yachts and SkipperBud's) set forth in Complaint paragraphs 522 to 527 were false and deceptive.

529.    The Detricks relied on Ferfecki's misrepresentations as set forth in Complaint paragraphs 522 to 527 in deciding to continue to work with Cruisers Yachts and SkipperBud's in their attempts to remedy the material defects and substantial impairments of the 54 Fly.

530.    Ferfecki ceased providing weekly status update meetings on or about mid-September 2023.

531.    Cruisers Yachts and SkipperBud's routinely failed to update the warranty and repair list or communicate with the Detricks regarding work performed, including but not limited to nature and scope of work, status of projects, diagnosis of problems, anticipated timing, completion of items, and other relevant information.

532.    Cruisers Yachts and SkipperBud's routinely created obstacles that delayed completion of repairs and work on the 54 Fly.

533.    Cruisers Yachts and SkipperBud's intentionally created confusion and misunderstandings that delayed completion of repairs and work on the 54 Fly.

534.    Cruisers Yachts and SkipperBud's have not performed any repairs or warranty work on the 54 Fly since on or about November 11, 2023.

535.    Cruisers Yachts and SkipperBud's have refused to communicate directly with the Detricks since March 19, 2024.

536.    Cruisers Yachts and Skipper Bud's actions and inactions have caused unnecessary emotional stress and breached the 54 Fly's warranty.

### *Excessive Number of Repairs and Punchlist Items – Substantial Impairment*

537.    As set forth above, the 54 Fly has been in a constant state of malfunction and repair since delivery in July 2022.

538.    As set forth above, the 54 Fly has had a substantial and lengthy punch list of items that has been ongoing and unresolved since delivery in July 2022.

539.    The overwhelming number of repairs and service needed since delivery of the vessel, individually and collectively, constitute a substantial impairment of the 54 Fly.

540.    The overwhelming number of punch list items, which have persisted since delivery of the vessel, collectively constitute a substantial impairment of the 54 Fly.

### SUMMARY OF ALLEGATIONS

541.    Since delivery in July 2022, the 54 Fly has experienced (and continues to experience) an unreasonable amount of defects, impairments, breakdowns, mechanical failures, design failures, flaws and defects in furnishings and appliances, damages to finishes by repair workers, safety hazards, and other problems on a continuous basis.

74

542. Cruisers Yachts and SkipperBud's significantly misrepresented the maximum speed of the 54 Fly, as its top speed is approximately 29 miles per hour, rather than 41.5 miles per hour.

543. When the Detricks requested that Cruisers Yachts and SkipperBud's take down videos publicly available on the internet making misrepresentations regarding the top speed and fuel range of the 54 Fly, they failed and refused to do so.

544. Cruisers Yachts and SkipperBud's videos containing the misrepresentations regarding top speed and fuel range were still publicly available at the time of filing this action and do not contain any disclaimer regarding specific model years or engine sizes.

545. Cruisers Yachts and SkipperBud's significantly misrepresented the fuel range of the 54 Fly, as its actual fuel range is approximately 133 nautical miles per tank, rather than 285.4 nautical miles.

546. Cruisers Yachts and SkipperBud's misrepresented the availability of specific colors and finishes requested by the Detricks and never provided the colors promised.

547. Cruisers Yachts, SkipperBud's, and the Promise Team, including Cruisers Yachts' President Pedersen, Cruisers Yachts' VP Zenz, and SkipperBud's Regional VP Riepe made material misrepresentations that were deceptive and/or unconscionable and persuaded the Detricks to purchase the 54 Fly, including misrepresentations regarding the vessel's speed, fuel range, specific colors, suitability for the Great Loop trip, and industry-best reliability, quality, quality control, luxury, beauty, functionality, comfort, ease of use, support and advisory services, time-tested engineering and design, dealer and manufacturer support systems, and above all else a vessel that was "standing tall and/or better than new" upon delivery.

548.    Cruisers Yachts and SkipperBud's repeatedly failed to repair or remedy warranty issues within a reasonable number of attempts or reasonable amount of time, including the many issues set forth herein.

549.    The facts set forth in this Complaint demonstrate a systemic problem and overwhelming culture of disregard for safety and workmanship within Cruisers Yachts and SkipperBud's.

550.    Cruisers Yachts and SkipperBud's failed to provide a product that was merchantable and suitable for the ordinary purposes to be served by such a vessel.

551.    Cruisers Yachts and SkipperBud's failed to provide a vessel that was suitable and fit for the particular purposes of the Detricks, including their plan to use the 54 Fly for the Great Loop trip while effectively managing Judy Detrick's health conditions.

552.    The actions and inactions of Cruisers Yachts and SkipperBud's breached express and implied warranties with respect to the 54 Fly and caused a substantial diminution in value of the vessel.

553.    Cruisers Yachts, SkipperBud's, and the Promise Team, specifically including Cruisers Yachts' Director of Customer Service Ferfecki  negligently provided, or failed to provide, repair, support, and advisory services to the Detricks, including issues related to troubleshooting the Garmin system, redesigning and repairing the hull to remedy engines overheating, applying coatings to the hull and propellers, diagnosing and repairing windshield wipers, installing and repairing the steering wheel, damaging finishes and fixtures in the vessel while performing other repairs, and more.

554.    Cruisers Yachts, SkipperBud's, and the Promise Team, including Cruisers Yachts' VP Zenz, Cruisers Yachts' President Pedersen, SkipperBud's Regional VP Riepe, and Ferfecki

have abandoned efforts to repair, remedy, or provide support and assistance to the Detricks related to the 54 Fly, and have referred the Detricks to their legal counsel for all communications.

555.    The actions and inactions of Cruisers Yachts, SkipperBud's, and the Promise Team have caused significant and unnecessary stress and emotional harm to the Detricks.

556.    Cruisers Yachts, SkipperBud's, and Kohler repeatedly failed to repair or remedy warranty issues with the generator system within a reasonable number of attempts or reasonable amount of time, including issues related to the Kohler generator overheating, defective intake and plumbing systems, and more.

557.    Jet Thruster negligently provided, or failed to provide, installation services to the Detricks, including issues related to incomplete installation of the bow and stern thrusters, defective wiring, unnecessary holes drilled in the hull of the vessel, and more.

558.    Since the date of delivery, the 54 Fly has remained in a constant state of repair and service due to the numerous problems that existed at the time of delivery and persisted through the time that this action was filed.

559.    From July 2022 to present, new problems and warranty issues with the 54 Fly have arisen on a regular basis, but Cruisers Yachts' and SkipperBud's work to resolve such problems has been inconsistent, untimely, and ineffective.

560.    As a result of the failures of Cruisers Yachts and SkipperBud's to provide a vessel "standing tall and/or better than new" the Detricks have been unable to use the 54 Fly for their Great Loop adventure, as promised by Cruisers Yachts and SkipperBud's.

561.    Instead, the Detricks' attempts at the Great Loop have twice been cut short because the 54 Fly was not seaworthy or safe, and the Detricks were subjected to significant safety risks and emotional stress in connection with their attempts to travel the Great Loop.

77

562.    Although Cruisers Yachts and SkipperBud's promised the Detricks a vessel "standing tall and/or better than new" throughout this course of events, they have failed to deliver on their promises, made numerous misrepresentations regarding the 54 Fly, and failed to fulfill their warranty responsibilities.

**COUNT I - Negligent Misrepresentation (Ohio Common Law)**
**Claim against Cruisers Yachts**

563.    Plaintiffs reallege and restate all of the preceding paragraphs as though fully set forth herein.

564.    Cruisers Yachts supplied false information to the Detricks regarding the 54 Fly, including related to the following:

    a.    Performance, including speed and fuel range;

    b.    Suitability for the Great Loop trip;

    c.    Availability of specific colors selected by the Detricks from Cruisers Yachts' color deck;

    d.    Ease of use;

    e.    Excellent joystick maneuverability;

    f.    Standing tall and/or better than new upon delivery, with no defects or punch list items upon delivery;

    g.    Heat shrunk electrical wiring;

    h.    Individually labeled electrical wiring; and

    i.    Saltwater readiness.

565.    Cruisers Yachts supplied the above-referenced information for the guidance of the Detricks in connection with the transaction and purchase of the 54 Fly.

78

566. At the time Cruiser Yachts supplied the above-referenced information, it knew or should have known that the information was false.

567. The Detricks justifiably relied on the above-referenced information in deciding to move forward with the purchase of the 54 Fly.

568. Cruisers Yachts failed to exercise reasonable care in communicating the above-referenced information to the Detricks.

569. As a proximate result of Cruisers Yachts' negligent misrepresentations, the Detricks suffered monetary damages in an amount to be determined at trial.

### COUNT II - Negligent Misrepresentation (Ohio Common Law)
### Claim against SkipperBud's

570. Plaintiffs reallege and restate paragraphs 1-562 as though fully set forth herein.

571. SkipperBud's supplied false information to the Detricks regarding the 54 Fly, including related to the following:

    a. Performance, including speed and fuel range;

    b. Suitability for the Great Loop trip;

    c. Availability of specific colors selected by the Detricks from Cruisers Yachts' color deck;

    d. Ease of use;

    e. Excellent joystick maneuverability;

    f. Standing tall and/or better than new upon delivery, with no defects or punch list items upon delivery;

    g. Heat shrunk electrical wiring;

    h. Individually labeled electrical wiring; and

    i. Saltwater readiness

572. SkipperBud's supplied the above-referenced information for the guidance of the Detricks in connection with the transaction and purchase of the 54 Fly.

573. At the time SkipperBud's supplied the information, it knew or should have known that the information supplied was false.

574. The Detricks justifiably relied on the above-referenced information in deciding to move forward with the purchase of the 54 Fly.

575. SkipperBud's failed to exercise reasonable care in communicating the above-referenced information to the Detricks.

576. As a proximate result of SkipperBud's negligent misrepresentations, the Detricks suffered monetary damages in an amount to be determined at trial.

**COUNT III – Promissory Estoppel (Ohio Common Law)**
**Claim against Cruisers Yachts**

577. Plaintiffs reallege and restate paragraphs 1-562 as though fully set forth herein.

578. Cruisers Yachts made clear and unambiguous promises to Plaintiffs, including the following:

    a. Performance, including speed and fuel range;

    b. Suitability for the Great Loop trip;

    c. Availability of specific colors selected by the Detricks from Cruisers Yachts' color deck;

    d. Ease of use;

    e. Excellent joystick maneuverability;

    f. Standing tall and/or better than new upon delivery, with no defects or punch list items upon delivery;

    g. Heat shrunk electrical wiring;

80

h.  Individually labeled electrical wiring;

i.  Saltwater readiness;

j.  Holding weekly status update meetings and providing regular written updates;

k.  Cruisers Yachts' payment or reimbursement of the costs and invoices incurred by the Detricks for repairs to the 54 Fly;

l.  Cruisers Yachts' payment or reimbursement of the fuel costs incurred by the Detricks related to testing, repairs, and malfunctions of the 54 Fly;

m.  Cruisers Yachts' compensation of the Detricks for wear and tear on the 54 Fly related to or caused by testing, repairs, and malfunctions;

n.  The Promise Team meeting with the Detricks in order to address the warranty issues, material defects, and substantial impairments of the 54 Fly; and

o.  Cruisers Yachts providing technical drawings and information related to the warranty issues, material defects, and substantial impairments of the 54 Fly.

579.  Plaintiffs reasonably and foreseeably relied on Cruisers Yachts' promises, including those set forth in paragraph 578 of the Complaint.

580.  Plaintiffs actually relied upon Cruisers Yachts promises in deciding to purchase the 54 Fly.

581.  Plaintiffs actually relied upon Cruisers Yachts' promises in deciding to continue to work with Cruisers Yachts and SkipperBud's in their attempts to remedy the material defects and substantial impairments of the 54 Fly.

582.  Plaintiffs were harmed as a result of their reliance on Cruisers Yachts' promises and Cruisers Yachts' failure to fulfill the promises.

81

583. As a proximate result of breaching its promises to Plaintiffs, Cruisers Yachts was unjustly enriched at the expense of Plaintiffs, and suffered damages in an amount to be determined at trial.

### COUNT IV – Promissory Estoppel (Ohio Common Law)
### Claim against SkipperBud's

584. Plaintiffs reallege and restate paragraphs 1-562 as though fully set forth herein.

585. SkipperBud's made clear and unambiguous promises to Plaintiffs, including the following:

   a. Performance, including speed and fuel range;

   b. Suitability for the Great Loop trip;

   c. Availability of specific colors selected by the Detricks from Cruisers Yachts' color deck;

   d. Ease of use;

   e. Excellent joystick maneuverability;

   f. Standing tall and/or better than new upon delivery, with no defects or punch list items upon delivery;

   g. Heat shrunk electrical wiring;

   h. Individually labeled electrical wiring;

   i. Saltwater readiness;

   j. Holding weekly status update meetings and providing regular written updates;

   k. SkipperBud's payment or reimbursement of the costs and invoices incurred by the Detricks for repairs to the 54 Fly;

   l. SkipperBud's payment or reimbursement of the fuel costs incurred by the Detricks related to testing, repairs, and malfunctions of the 54 Fly;

82

m. SkipperBud's compensation of the Detricks for wear and tear on the 54 Fly related to or caused by testing, repairs, and malfunctions;

n. The Promise Team meeting with the Detricks in order to address the warranty issues, material defects, and substantial impairments of the 54 Fly; and

o. SkipperBud's providing technical drawings and information related to the warranty issues, material defects, and substantial impairments of the 54 Fly.

586.	Plaintiffs reasonably and foreseeably relied on SkipperBud's promises, including those set forth in paragraph 585 of the Complaint.

587.	Plaintiffs actually relied upon SkipperBud's promises in deciding to purchase the 54 Fly.

588.	Plaintiffs actually relied upon SkipperBud's promises in deciding to continue to work with Cruisers Yachts and SkipperBud's in their attempts to remedy the material defects and substantial impairments of the 54 Fly.

589.	Plaintiffs were harmed as a result of their reliance on SkipperBud's promises and SkipperBud's failure to fulfill the promises.

590.	As a proximate result of breaching its promises to Plaintiffs, SkipperBud's was unjustly enriched at the expense of Plaintiffs, and suffered damages in an amount to be determined at trial.

### COUNT V - Fraud (Ohio Common Law)
### Claim against Cruisers Yachts

591.	Plaintiffs reallege and restate paragraphs 1-562 as though fully set forth herein.

592.	Cruisers Yachts made representations to Plaintiffs regarding the following:

a. The 54 Fly would be furnished with the specific colors selected by the Detricks from any of the colors in Cruisers Yachts' color decks, as set forth paragraphs 40 and 158-178 of the Complaint;

b. The 54 Fly would travel at top speeds of at least 41.5 miles per hour, as set forth in paragraph 38 of the Complaint;

c. The 54 Fly would have a fuel range of approximately 285.4 nautical miles per tank of fuel, as set forth in paragraph 39 of the Complaint;

593. Cruisers Yachts' representations were material to the transaction to purchase the 54 Fly.

594. Cruisers Yachts made the representations knowing they were false, or with complete disregard and recklessness for the truth or falsity of the representations.

595. Cruisers Yachts intended to mislead Plaintiffs into relying on the representation and purchasing the 54 Fly.

596. Plaintiffs justifiably relied on the representations in deciding to purchase the 54 Fly.

597. As a proximate result of Plaintiffs' reliance on Cruisers Yachts' false representations, Plaintiffs were harmed and suffered damages in an amount to be determined at trial.

### COUNT VI - Fraud (Ohio Common Law)
### Claim against SkipperBud's

598. Plaintiffs reallege and restate paragraphs 1-562 as though fully set forth herein.

599. SkipperBud's made representations to Plaintiffs regarding the following:

a. The 54 Fly would be furnished with the specific colors selected by the Detricks from any of the colors in Cruisers Yachts' color decks, as set forth paragraphs 40 and 158-178 of the Complaint;

84

b.  The 54 Fly would travel at top speeds of at least 41.5 miles per hour, as set forth in paragraph 38 of the Complaint;

c.  The 54 Fly would have a fuel range of approximately 285.4 nautical miles per tank of fuel, as set forth in paragraph 39 of the Complaint;

600.  SkipperBud's representations were material to the transaction for Plaintiffs to purchase the 54 Fly.

601.  SkipperBud's made the representations knowing they were false, or with complete disregard and recklessness for the truth or falsity of the representations.

602.  SkipperBud's intended to mislead Plaintiffs into relying on the representation and purchasing the 54 Fly.

603.  Plaintiffs justifiably relied on the representations in deciding to purchase the 54 Fly.

604.  As a proximate result of Plaintiffs' reliance on SkipperBud's false representations, Plaintiffs were harmed and suffered damages in an amount to be determined at trial.

**COUNT VII – Civil Conspiracy (Ohio Common Law)**
**Claim against Cruisers Yachts and SkipperBud's**

605.  Plaintiffs reallege and restate paragraphs 1-562 as though fully set forth herein.

606.  Defendants Cruisers Yachts and SkipperBud's, in combination with each other, engaged in improper, wrongful, and unlawful acts in order to further their interests and to harm the interests of Plaintiffs, including but not limited to perpetrating a fraud upon Plaintiffs, delivering a defective and non-conforming vessel, and refusing to honor the warranty and promises made to Plaintiffs.

607.  This conspiracy resulted in the unlawful and/or tortious conduct described above.

608.  As a proximate result of this conspiracy and the corresponding unlawful and/or tortious conduct, Plaintiffs suffered damages in an amount to be determined at trial.

85

**COUNT VIII - Ohio Uniform Commercial Code 2-608 (Ohio Rev. Code § 1302.66)**
**Nonconforming Goods and Revocation of Acceptance**
**Claim against SkipperBud's**

609.    Plaintiffs reallege and restate paragraphs 1-562 as though fully set forth herein.

610.    The Detricks are "buyers" under Ohio Uniform Commercial Code, Chapter 2, Sales (Ohio Rev. Code § 1302, *et seq.*).

611.    SkipperBud's is a "seller" under the Ohio UCC.

612.    The 54 Fly is a "good" under the Ohio UCC.

613.    The Detricks purchased the 54 Fly from SkipperBud's. Attached hereto as Exhibit 40 is a true and accurate copy of the purchase order form for the 54 Fly.

614.    The Detricks accepted the 54 Fly from SkipperBud's on the reasonable assumption that any nonconformities would be remedied within a reasonable period of time.

615.    The 54 Fly has numerous nonconformities which have not been remedied within a reasonable period of time and its value is substantially impaired.

616.    Accordingly, the 54 Fly is a non-conforming good.

617.    The Detricks revoked their acceptance of the 54 Fly based on substantial impairments, within a reasonable period of time, and are entitled to damages in an amount to be determined at trial, including refund of the purchase price and consequential damages resulting from the nonconforming and substantially impaired goods.

**COUNT IX - Magnuson-Moss Warranty Act (15 U.S.C. § 2301, *et seq.*)**
**Breach of Express Warranty**
**Claim against Cruisers Yachts**

618.    Plaintiffs reallege and restate paragraphs 1-562 as though fully set forth herein.

619.    The Detricks are "consumers" as defined by the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*.

86

620. The Detricks purchased the 54 Fly from SkipperBud's, manufactured by Cruisers Yachts, which is a "consumer product" as defined by the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*.

621. Cruisers Yachts is the "supplier" or "warrantor" of the 54 Fly as defined by the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*. Attached hereto as Exhibit 41 is a true and accurate copy of the written warranty for the 54 Fly.

622. Cruisers Yachts also expressly warranted the 54 Fly through its communications and statements to the Detricks regarding warranty-related issues on numerous occasions, including but not limited to emails and documents attached as Exhibits 3, 4, 5, 7, 22, 24, 30, and 36 to the Amended Complaint.

623. The Detricks notified Cruisers Yachts of the 54 Fly's defects, malfunctions, and impairments set forth herein, and Cruisers Yachts failed to remedy within a reasonable amount of time, reasonable number of attempts, without charge.

624. Cruisers Yachts breached its express warranties with respect to the Detricks' 54 Fly, specifically with respect to the following material defects that were not remedied within a reasonable time, reasonable number of attempts, without charge:

    a. Joystick, as set forth in paragraphs 179–212 of the Complaint;

    b. Center of gravity and bow angle, as set forth in paragraphs 213–254 of the Complaint;

    c. Unlevel beds, as set forth in paragraphs 255–263 of the Complaint;

    d. Garmin system, as set forth in paragraphs 264–289 of the Complaint;

    e. Volvo Penta engines, as set forth in paragraphs 290–300 of the Complaint;

    f. Kohler generator, as set forth in paragraphs 301–312 of the Complaint;

g. Windshield wipers, as set forth in paragraphs 313–321 of the Complaint;

h. Hull design and engineering, as set forth in paragraphs 322–334 of the Complaint;

i. Instrument, sensors, and gauges, as set forth in paragraphs 335–342 of the Complaint;

j. Fuel gauge, as set forth in paragraphs 343–346 of the Complaint;

k. Fuel burn computer, as set forth in paragraph 347–350 of the Complaint;

l. Steering wheel, as set forth in paragraphs 351–365 of the Complaint;

m. Poor workmanship and defective door finishes, as set forth in paragraphs 366–371 the Complaint;

n. Water filtration system, as set forth in paragraphs 372–381 of the Complaint;

o. Swim platform, as set forth in paragraphs 382–390 of the Complaint;

p. SeaDek, as set forth in paragraphs 391–395 of the Complaint;

q. Ignition system, as set forth in paragraphs 396–403 of the Complaint;

r. Caulking and sealing, as set forth in paragraphs 404–414 of the Complaint;

s. Salon door, as set forth in paragraphs 415–426 of the Complaint;

t. Unlevel appliances, as set forth in paragraphs 427–430 of the Complaint;

u. Unlevel air conditioning equipment, as set forth in paragraphs 431–434 of the Complaint;

v. Unlevel surfaces, as set forth in paragraphs 435–437 of the Complaint;

w. Refrigerator, as set forth in paragraphs 438–439 of the Complaint;

x. Electrical wiring, as set forth in paragraphs 440–444 of the Complaint;

y. Fuse Box, Network Cables, and Electronic Devices, as set forth in paragraphs 445–447 of the Complaint;

z.   Ceramic windshield coating, as set forth in paragraph 448–452 of the Complaint;

aa. Propspeed coatings, as set forth in paragraph 453–457 of the Complaint;

bb. FLIR Camera, as set forth in paragraph 458 of the Complaint;

cc. Siren Marine system, as set forth in paragraph 459–463 of the Complaint;

dd. Ice maker, as set forth in paragraph 464 of the Complaint;

ee. Shower door, as set forth in paragraph 465 of the Complaint;

ff.  Shower drain, as set forth in paragraph 466 of the Complaint;

gg. Electronic toilet flush system, as set forth in paragraph 467 of the Complaint;

hh. Door seals, as set forth in paragraph 468–470 of the Complaint;

ii.  Window seals, as set forth in paragraphs 471–472 of the Complaint;

jj.  Window coverings, as set forth in paragraphs 473–476 of the Complaint;

kk. High gloss finishes, as set forth in paragraphs 477–480 of the Complaint;

ll.  Solid surface countertops, as set forth in paragraphs 481–482 of the Complaint;

mm.        Unsafe stairs, as set forth in paragraphs 483–484 of the Complaint.

nn. Cabinet drawers, as set forth in paragraph 485 of the Complaint.

oo. Air conditioning, as set forth in paragraphs 486–487 of the Complaint;

pp. Anti-corrosion system, as set forth in paragraph 488 of the Complaint;

qq. Traveling on plane, as set forth in paragraphs 489–490 of the Complaint;

rr.  Seakeeper, as set forth in paragraphs 491–508 of the Complaint;

ss. Flybridge, as set forth in paragraphs 509–511 of the Complaint; and

tt.  Stainless steel, as set forth in paragraphs 512–513 of the Complaint.

625.   As a proximate result of Cruisers Yachts' breach of its express warranties, the Detricks suffered damages in an amount to be determined at trial.

89

**COUNT X- Magnuson-Moss Warranty Act (15 U.S.C. § 2301, et seq.)**
**Breach of Implied Warranty of Merchantability**
**Claim against SkipperBud's**

626.    Plaintiffs reallege and restate paragraphs 1-562 as though fully set forth herein.

627.    The Detricks are "consumers" as defined by the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*.

628.    The Detricks purchased the 54 Fly from SkipperBud's, which is a "consumer product" as defined by the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*.

629.    SkipperBud's is a "supplier" or "warrantor" of the 54 Fly as defined by the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*.

630.    SkipperBud's provided a service contract in connection with Detrick's purchase of the 54 Fly. Attached hereto as Exhibit 42 is a true and accurate copy of the agreement evidencing the service contract provided by SkipperBud's.

631.    The Detrick's purchase of the 54 Fly from SkipperBud's carried with it an implied warranty of merchantability, pursuant to Ohio law.

632.    The 54 Fly is not fit for the ordinary purposes for which such goods are used, and therefore SkipperBud's has breached the implied warranty of merchantability, as defined by Ohio law, and thereby violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*.

633.    As a proximate result of SkipperBud's breach of the implied warranty of merchantability, the Detricks suffered damages in an amount to be determined at trial.

**COUNT XI - Magnuson-Moss Warranty Act (15 U.S.C. § 2301, *et seq*.)**
**Breach of Implied Warranty of Fitness for Particular Purpose**
**Claim against SkipperBud's**

634.    Plaintiffs reallege and restate paragraphs 1-562 as though fully set forth herein.

90

635.    The Detricks are "consumers" as defined by the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*.

636.    The Detricks purchased the 54 Fly from SkipperBud's, which is a "consumer product" as defined by the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*.

637.    SkipperBud's is the "supplier" or "warrantor" of the 54 Fly as defined by the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*.

638.    SkipperBud's provided a service contract in connection with Detrick's purchase of the 54 Fly.

639.    The Detrick's purchase of the 54 Fly from SkipperBud's carried with it an implied warranty of fitness for a particular purpose, pursuant to Ohio law.

640.    The 54 Fly is not fit for the particular purposes of the Detricks, as set forth in paragraphs 10–52 of the Complaint, and therefore SkipperBud's has breached the implied warranty of fitness for a particular purpose, as defined by Ohio law, and thereby violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*.

641.    As a proximate result of SkipperBud's breach of the implied warranty of fitness for a particular purpose, the Detricks suffered damages in an amount to be determined at trial.

## COUNT XII – Declaratory Judgment
## Claim against Cruisers Yachts and SkipperBud's

642.    Plaintiffs reallege and restate paragraphs 1-562 as though fully set forth herein.

643.    In November 2021, SkipperBud's provided a preliminary purchase/retail order form. (*See* Doc. No. 1-40.)

644.    On May 22, 2025, Cruisers Yachts and SkipperBud's submitted a Preliminary Estimate of Attorney Fees (Doc. No. 66), stating the following: "As there is an Attorneys' Fees

provision in the Purchase Agreement for the Vessel, see [ECF No. 1-40] at 2, the Defendants will seek the award of attorneys' fees and costs at the conclusion of this litigation."

645. The November 2021 purchase/retail order form is not a valid and enforceable agreement, insofar as it was preliminary in nature, subject to change, and did not represent the parties' final agreement.

646. The "Attorney's Fees" provision in the purchase/retail order form is unconscionable, void against public policy, and/or not a valid or enforceable contractual provision.

647. There is a real and justiciable controversy between the parties as to this issue and relief is necessary to preserve the rights of Plaintiffs.

648. Accordingly, Plaintiffs are entitled to a declaration that the November 2021 purchase/retail order form is void and unenforceable, and further that the "Attorney's Fees" provision is void and unenforceable.

## COUNT XIII - Breach of Contract
### Claim against Jet Thruster

649. Plaintiffs reallege and restate paragraphs 1-562 as though fully set forth herein.

650. Jet Thruster entered into a valid and enforceable contract with the Detricks to install bow and stern thrusters in the 54 Fly.

651. The Detricks performed their contractual obligations.

652. Jet Thruster breached the contract by performing in a defective and unworkmanlike manner.

653. Jet Thruster breached the contract by failing to complete the installation as agreed upon by the parties.

654. As a proximate result of Jet Thruster's breach of contract, the Detricks suffered damages in an amount to be determined at trial.

92

## COUNT XIV - Breach of Implied Warranty of Workmanlike Performance
## Claim against Jet Thruster

655.    Plaintiffs reallege and restate paragraphs 1-562 as though fully set forth herein.

656.    Implied in Jet Thruster's contract with Plaintiffs was an implied warranty of workmanlike performance, with respect to performing the installation of bow and stern thrusters in the 54 Fly.

657.    Jet Thruster breached its warranty of workmanlike performance to Plaintiffs by negligently drilling three unnecessary holes in the hull of the 54 Fly, which needed to be repaired, negligently performing the installation, and failing to complete the installation of the bow and stern thrusters.

658.    As a proximate result of Jet Thruster North America's unworkmanlike performance of services on the 54 Fly, the Detricks suffered damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand the following relief:

- Revocation of acceptance (as to Defendant SkipperBud's);

- Rescission of the purchase (as to Defendant SkipperBud's);

- Refund of the purchase price (as to Defendants SkipperBud's and Cruisers Yachts);

- Consequential and compensatory damages (as to Defendants SkipperBud's and Cruisers Yachts), including but not limited to diminution in value of the 54 Fly, loss of use of the 54 Fly, repair costs (past and future), expenses incurred as a proximate result of violations of the law, finance charges, emotional distress, and any other damages suffered by the Detricks as a result of the violations of law, tortious conduct, and actions or inactions of above-referenced Defendants described herein;

- Reimbursement of payments for work not performed under the contract (as to Defendant Jet Thruster);

- Compensatory damages for diminution in value, and other harm, costs, and expenses incurred as a proximate result of unworkmanlike performance (as to Defendant Jet Thruster);

93

- Declaratory judgment that the November 2021 purchase/retail order form and/or the "Attorney's Fees" provision is void and unenforceable;

- Punitive damages (as to Defendants Cruisers Yachts and SkipperBud's);

- Reasonable attorney fees and costs (as to Defendants SkipperBud's and Cruisers Yachts); and

- Any other relief the Court determines is appropriate (as to any Defendant).

## JURY DEMAND

Plaintiffs demand a jury trial by the maximum number of jurors permitted as to all issues alleged herein.

Respectfully submitted,

*/s/ Daniel A. Richards*
Daniel A. Richards (OH Reg. No. 0059478)
   Email: drichards@westonhurd.com
   Direct Dial: 216.687.3256
Russell Rendall (OH Reg. No. 0089901)
   Email: rrendall@westonhurd.com
   Direct Dial: 216.687.3375
WESTON HURD LLP
1300 E. 9th St., Suite 1400
Cleveland, OH 44114

*Attorneys for Plaintiffs*
*Norm Detrick and Judy Detrick*

94

95

## **CERTIFICATE OF SERVICE**

On this 27th day of June, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent to parties by operation of the Court's electronic filing system. A copy of the foregoing is also being sent via email to Defendant Jet Thruster Marine, LLC, jetthrusteramerica@gmail.com.

*/s/ Daniel A. Richards*
One of the Attorneys for Plaintiffs